AARON BARTHOLOMEW V. JOHN GUTHRIE.

No. 14,209.   (81 Pac. 491.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Demurrer*—*When Error Will Lie.*  Under section 542 of the code of civil procedure (Gen. Stat. 1901, sec. 5019), error will lie to the supreme court from a decision of the district court which sustains or overrules a demurrer, even when the party against whom the ruling is made stands upon his exception thereto and no judgment on the issues is rendered against him.

2. ——— *General Demurrer Searches the Record.*  A general demurrer to separate defenses of an answer searches the record, and if the petition does not state facts sufficient to constitute a cause of action the demurrer should be sustained to it.

3. IMPLIED TRUST—*Suit to Enforce*—*Pleadings.*  Petition in this case examined and held sufficient; also second and fourth defenses of answer held sufficient as against demurrer.

Error from Shawnee district court; Z. T. HAZEN, judge.  Opinion filed July 7, 1905.  Affirmed.

STATEMENT.

THE plaintiff in error filed his petition in the district court of Shawnee county, in which he alleged in substance that Elizabeth Bartholomew and Sarah E. Bartholomew, who were respectively the mother and the sister of plaintiff, during their lifetime owned a certain tract of land in the state of Iowa, of which state the plaintiff, his mother and sister were residents; that the mother and sister had certain dealings with reference to the land with the Darrow Investment Company and one Mary H. Burnham, by virtue of which the investment company and Burnham claimed to be the owners of the land, which the mother and sister disputed, but were unable to bring about a satisfactory settlement of such controversy; that about the 1st of April, 1897, the mother and sister

45—71 KAN.

conveyed the land by deed to defendant, John Guthrie, with the understanding that he should institute a suit against the investment company and Burnham for the purpose of having the title claimed by them adjudged to be only a mortgage, and that the defendant should pay over to them the fruits of such litigation; that the defendant did institute such suit, and succeeded in having it adjudged that the claim of the investment company and Burnham was only a mortgage, and that the court appointed a master in chancery to take evidence and report the amount due thereon; that on the 9th day of October, 1899, the plaintiff's mother died intestate, leaving as sole heirs the plaintiff, his sister, Sarah E. Bartholomew, and his brother, John B. Bartholomew; that on the 23d day of February, 1900, his sister died intestate, leaving the plaintiff and his brother as her sole heirs, and on the 1st day of April, 1900, John B. Bartholomew died intestate, leaving his widow, Amanda B., as his sole heir; that the mother and sister died in the state of Iowa, and the brother in the state of Kansas. The plaintiff also pleaded several sections of the statutes of Iowa relating to descents and distributions, one of which, relating to heirs of parents, reads:

"If both parents are dead, the portion which would have fallen to their share by the above rules shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on, through ascending ancestors and their issue." (Code of Iowa, 1897, § 3381.)

The petition further alleged that the land had never been sold for the payment of the debts of the plaintiff's mother, sister, or brother; that administration had been had upon the estates of the mother and brother, and finally closed and the administrator discharged; that the sister died owing no debts, and that there was no administration upon her estate; that on

the 5th day of October, 1900, the defendant, in a compromise settlement of the suit instituted by him as trustee, received the sum of $1800 in consideration of his consenting to a decree awarding the title to the land to the investment company and Burnham, and that after the payment of all costs, charges, expenses and compensation for services there remained in the hands of the defendant $1000; that at the time of this settlement plaintiff owned a three-fourths interest in the land, and was entitled to a like proportion of the proceeds of the settlement, for which he had made demand upon defendant in the sum of $750.

To this petition the defendant filed answer alleging four defenses: First, a general denial. Second, that the plaintiff was not the real party in interest or entitled to recover on the cause of action stated in the petition, and alleging the death of the plaintiff's mother, sister, and brother; that the alleged interest of the plaintiff as heir to his mother, sister and brother is subject to the debts, liabilities and necessities of the estate of his mother, Elizabeth Bartholomew; that one Myers had been appointed administrator of the estate of Elizabeth Bartholomew; that a large number of claims had been proved against the estate and remained unpaid; that the estate is insolvent and the administrator is entitled to subject the interest claimed by plaintiff to the payment of the debts of the estate; that the plaintiff is not vested with any right of action thereon.

For a third defense the defendant, in substance, alleged the execution to him of separate quitclaim deeds by the plaintiff's mother and sister; that no declaration or agreement to hold the land in trust or concerning the proceeds thereof was ever executed in writing by the plaintiff's mother, sister, or defendant; that the land had been in litigation for some years, and was heavily encumbered; that the defendant had been employed as attorney by John B. Bartholomew to de-

fend the interests of the mother and sister of plaintiff in the land; that John B. Bartholomew had expended $628 in purchasing liens against, and had paid other· expenses in defending the right of the mother and sister in, the land; that defendant, as attorney, satisfied the liens and judgments by procuring a loan on the land from the Darrow Investment Company, and that the mother and sister of plaintiff were unable to redeem the land from such settlement and loan, and in March, being about to lose the land, they conveyed it to defendant without any agreement as to any trust, terms, or conditions; that the defendant instituted the suit pleaded by plaintiff in his own name and right, to have the claims of the Darrow Investment Company and Burnham adjudged to be a mortgage, and did not sue as trustee for the mother or sister of plaintiff; that John B. Bartholomew had paid items of expense, aggregating nearly $160, incurred by defendant in the prosecution of the suit; that the suit was compromised and settled, and the defendant received in consideration thereof $1798. This defense then set forth the items of the expenditure of such sum, including an item of $1000.22 which the defendant alleged he "paid to John Norton, administrator of the estate of John B. Bartholomew, duly appointed and qualified as such by and in the probate court of Shawnee county, Kansas, on account of the advancements, disbursements, assignment of mortgages, conveyance of land and money in purchase of, and in reduction of liens and judgments against, said real estate by said J. B. Bartholomew."

The fourth defense in the answer refers to the third, making it a part of the fourth, and alleged, in substance, that since the commencement of this suit Norton, as administrator, filed in the probate court of Shawnee county, Kansas, his final report showing the receipt of said money, and asked final discharge; that the plaintiff had notice of the hearing of such report

and application, and appeared in court and objected to, and resisted, final settlement of the estate; that the court, after a hearing thereon, ordered payment of the funds to the widow of John B. Bartholomew, after paying costs and expenses of administration, and allowed final settlement, and that said order is in full force and effect, unreversed and unappealed from.

The plaintiff demurred to the second and fourth defenses in this answer, and the court overruled the demurrer.

Plaintiff. stood upon his demurrer, but no judgment was taken against him. He brings the ruling to this court for review, and the only question presented for consideration is whether the demurrer to either or both of the defenses should have been sustained.

*Albert Watkins,* for plaintiff in error.

*A. Bergen,* and *Edwin A. Austin,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The defendant in error presents two objections to the consideration of the errors complained of by the plaintiff in error:

(1) The order overruling the demurrer shows that plaintiff elected to stand on his demurrer, but no judgment was entered. This objection is not well taken. Section 542 of the code of civil procedure expressly provides:

"The supreme court may also reverse, vacate or modify any of the following orders of a district court:' . . . 2. An order . . . that sustains or overrules a demurrer." (Gen. Stat. 1901, § 5019.)

(2) It is urged that the petition does not allege facts sufficient to constitute a cause of action, and that, as the demurrer should search the record and be

sustained as to the first pleading found insufficient, it should have been sustained as to the petition and not considered as to the answer. The defendant in error is wrong in this contention. While the cause of action set forth in the petition is apparently based upon an express trust in lands or the proceeds thereof created by parol agreement, and such agreement would under section 7875 of the General Statutes of 1901 be ineffective to create a trust, yet the facts stated are such that a trust arises therefrom by implication of law. It is alleged, in substance, that the grantors were the owners of certain land, which was in litigation, and that they conveyed it to their attorney at law, who had been theretofore and was at the time and thereafter employed to protect their interest therein. The conveyance was presumably made for the purpose of facilitating some compromise of the suit or sale of the land, and, as alleged in the petition, was made under an agreement and understanding—not alleged to be in writing—that the grantee "should institute and prosecute a suit" against certain parties claiming ownership of the land, and "should pay over and turn over to them [the grantors] the fruits of such litigation."

Regarded as a trust in land, this lacks the allegation that the agreement was in writing to make it effective. Indeed, since the defendant filed his motion to have the petition made more definite and certain by stating whether this agreement was in writing or oral, we must construe the allegation most strongly against the pleader and consider it as oral. But if the agreement was verbal it does not thereby debar, but aids, the implication of law that a trust arises from the facts. (*Franklin v. Colley,* 10 Kan. 260.)

It may be questioned whether the contract purported to create a trust in the lands, to which reference will be made later, or merely in "the fruits of the litigation." Be this as it may, the law would imply a

trust in the land so long as the title thereto was held by the grantee, and in the proceeds of the land when it was converted.   It follows that the petition was not demurrable on the ground urged.

It remains, then, to determine whether the demurrer should have been sustained to the second and fourth defenses, or to either.   As to the second defense—that, not the plaintiff, but the administrator of his mother's estate, was entitled to recover the portion claimed by plaintiff—much depends upon the inheritance which descended to the plaintiff upon the death of his mother and sister, as the facts were set forth in the petition to which this defense was pleaded.   No portion of the legal title descended to the plaintiff, for that title, as stated in the petition, had been conveyed by the mother and sister to the defendant, and neither of them was seized of such title at their respective deaths.   From the same source we learn that at the time of the conveyance to the defendant the title to the land was in dispute, and the mother and sister, being unable to get a settlement or adjustment of the adverse claims, conveyed the land to the defendant for the very purpose of "instituting and prosecuting" a suit, not to have the adverse claims adjudged void or groundless, but to have that which was claimed to be an adverse title in fee adjudged to be only a lien—a mortgage.   There is no allegation or intimation in the petition that the grantors were able, or expected, to redeem the land if the defendant should be, as he was, successful in the suit.   The defendant undertook a service which involved the expenditure of time and money, and it must have been contemplated that he should be recompensed out of this land, already encumbered beyond the powers of the grantors to redeem.   So it was not contemplated that the defendant, if successful, should reconvey the land to his grantors. The petition itself says:

"It was also expressly agreed and understood be-

tween said Elizabeth and Sarah E. Bartholomew and said defendant that the defendant should pay and turn over to them *the fruits of such litigation.*"

Equity will not imply a greater or a different trust than the circumstances, including the understanding and purpose of the parties, render necessary to protect the interests of a beneficiary who is innocent of wrong; especially when, as in this case, the trustee appears to have acted with fidelity and in accordance with the purpose of the conveyance of the land to him, at least so far as the compromising of the litigation and receiving the *fruits* thereof are concerned. · The land, in any event, was lost to the grantors. It was even doubtful if they had any conveyable interest therein. They quitclaimed this doubtful title to the defendant with the understanding that he should begin litigation in his own name, and that he should account for the *fruits* of the *litigation* if, by chance, he should be able to make it bear fruit.

The allegation of the petition that the land was conveyed to defendant in trust for the use of the grantors is a conclusion of law rather than of fact, and the court was not bound thereby. The court evidently construed this agreement as creating the defendant a trustee of the problematical "fruits of the litigation" and that, if such fruits materialized, it was contemplated that they would be in the form of personal property, and that as such they became assets in the hands of the administrator of the deceased mother's estate, and, with this view, overruled the demurrer to the second defense. Even if this was erroneous, which we are not prepared to say, it is difficult to see how the plaintiff was prejudiced thereby, since the fourth defense, including as it does the facts stated in the third defense in regard to the disposition of "the fruits of the litigation," alleges, in substance, that the entire sum of $1798 received by the defendant in the settlement was expended in the payment of the ex-

penses and attorney's fees incurred in the suit, and in returning to the estate of John B. Bartholomew the money advanced by him for that purpose. That such expenses were to be paid before "paying over the fruits" is certainly an implied condition of the contract as set forth in the petition. This seems to be the real issue in the case—whether the charges alleged to have been paid were legal and reasonable, and were, with the expenses for which credit is claimed, actually paid. This is in the nature of an accounting with the trustee.

We are not called upon to decide whether or not the order of the probate court of Shawnee county in making final settlement of the estate of John B. Bartholomew, and ordering disbursement to the widow, was *res judicata* as to plaintiff and determinative of his rights, as that question was not necessarily involved in the demurrer. It is enough to sustain the decision of the court if the facts stated in the fourth defense, being admitted as true, constituted even a partial defense to the claim set forth in the petition. Even a cursory reading of this defense will disclose that at least some, if not all, of the expenditures alleged to have been made by John B. Bartholomew in his lifetime were claimed to be advancements made to the defendant, or at defendant's instance, for the very purpose of carrying on the litigation and removing liens from the real estate conveyed, which made it more valuable and added to the "fruits of the litigation." Such advancements were in the nature of debts of the trustee, as such, and the trustee had the implied power, and it was his duty even, to pay the same.

The decision of the court in overruling the demurrer to both defenses is sustained, and the case is remanded for further proceedings.

All the Justices concurring.