GEORGE BLACKWELL, *Appellant*, V. JAMES M. BLACK-
WELL et al., *Appellees*.

No. 17,886.

SYLLABUS BY THE COURT.

1. TRUST—*In Real Estate*.  A trust in real estate implies a hold-
ing of the legal title by one for the benefit of another who
holds the equitable title.

2. ABSOLUTE CONVEYANCE—*Verbal Promise to Reconvey—No
Trust Arises*.  A conveyance absolute in terms can not be de-
feated by a mere verbal promise to reconvey, and when the
circumstances attending such conveyance and agreement fail
to show an intent by the grantor to retain the equitable title
no trust arises by implication of law.

3. NATURE OF ACTION — *Damages — Accounting*.  An allegation
that personal property was by a defendant converted to his
own use indicates a right to recover damages for such con-
version and not a right to an accounting.

Appeal from Lyon district court.  Opinion filed Jan-
uary 11, 1913.  Affirmed.

*Sam B. Strother, W. T. Campbell*, and *J. G. Hutchi-
son*, all of Kansas City, Mo., and *W. A. Randolph*, of
Emporia, for the appellant.

*R. M. Hamer*, and *W. C. Harris*, both of Emporia,
for the appellees.

The opinion of the court was delivered by

WEST, J.:  The petition alleged in substance that the
plaintiff and defendant James M. Blackwell, his
brother, were on and prior to January 28, 1895, the
joint owners of a half section of land in Lyon county;
that the defendants were husband and wife, with whom
the plaintiff, not married, was making his home on this
land, farming and cultivating the same and using the
proceeds for their support and that of the parents of
the two brothers who also lived with them; that on

the date mentioned plaintiff executed and delivered to the defendants a warranty deed for his undivided half of the northwest quarter of the section, and on the twentieth day of April, 1897, a like deed for the northeast quarter; that on January 28, 1895, plaintiff was intending to go to South America, and desired that in case of his failure to return the defendants should have his property, and entered into a verbal agreement with them by which he agreed without consideration to convey to them his interest in the northwest quarter provided they would agree to reconvey if he should at any time request it; that they so agreed, and pursuant to such agreement the deed to the northwest quarter was made; that he remained with them until April 11, 1902, when he went away, and when about to leave, in order that the defendants should have his property if he should fail to return and also in order that they might renew a mortgage shortly to fall due on the premises he verbally agreed with them that he would convey to them his undivided half interest in the northeast quarter upon their verbal promise and agreement that they would reconvey if he should so request; that at the time of this conveyance there was a mortgage on both quarters for about $2500 soon to become due, and it was agreed that defendants should execute a new mortgage in order to pay it off; that he went away and did not return until 1907, when he requested a conveyance, which the defendants refused; that ever since the conveyance the defendants had been in possession of the land, receiving the rents and profits.

The second clause of action included the allegations of the first and alleged that there was left on the premises about $1500 worth of personal property, the result of the joint efforts of the plaintiff and his brother in equal shares; that defendant James M. Blackwell took possession thereof and converted it to his own use about April 11, 1902, and that the plaintiff had never received any part thereof or proceeds therefrom.

The third cause of action adopted the allegations of the first and second causes and alleged that afterwards the defendants executed a mortgage on the premises amounting to $5922, which was a lien on the lands, leaving a balance on hand, after paying off the former incumbrance, of $3422, which they converted to their own use on March 7, 1910. Plaintiff prayed for an accounting and for judgment for the amount found due him and that he be declared the owner of an undivided half of the land, and for partition. The defendants demurred to each of the three causes of action, which demurrer was sustained and the plaintiff appeals.

He argues that the facts stated in the first cause of action show the creation of an equitable trust which need not be in writing, under section 9694 of General Statutes of 1909. That as there was already a joint ownership of the land and a joint obligation to support the parents and a like obligation to take care of the mortgage, having received his conveyance and having refused to reconvey upon his request, the presumption arises that the defendants took it with fraudulent intent and purpose and therefore ought not to be heard to assert that the absence of a written agreement precludes the plaintiff from obtaining relief. The defendants insist that the situation comes squarely within the provision of the statute referred to, and that the plainiff can not be heard to claim a trust unless he can show written evidence thereof.

As to the second cause of action the defendants assert that the bar of the statute of limitations precludes recovery, while the plaintiff contends that by making the first cause a part of the second a personal trust was alleged upon which a cause of action would not accrue until demand and refusal; that the action was not in tort but on an implied contract, and having been begun within three years was in time.

As to the third the plaintiff argues that the action

was begun within two years after the alleged conversion, and that the $3422 is really a part of the land in controversy, and therefore depends upon his right to recover upon the first cause of action, which dependence is conceded by the defendants.

The language of the statute is:

"No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing." (Gen. Stat. 1909, § 9694.)

What is a trust?

"A trust has been variously defined as . . . a holding of property, subject to a duty of employing it or applying its proceeds according to directions given by the person from whom it was derived; a right of property, real or personal, held by one party for the benefit of another; and an equitable right, title, or interest in property, real or personal, distinct from the legal ownership thereof. . . . In its simplest elements a trust is a confidence reposed in one person, called the trustee, for the benefit of another, called the *cestui que trust,* with respect to property held by the former for the benefit of the latter. It implies two estates or interests, one equitable and one legal, and is said to exist where property is conferred upon and accepted by one person on terms of holding, using, or disposing of it for the benefit of another." (39 Cyc. 17, 18.)

In *National Bank v. Ellicott, Assignee,* 31 Kan. 173, 1 Pac. 593, it was said (p. 175) that a trust is an equitable right, title or interest in property, real or personal, the legal title being in some other person. Express trusts are those created by direct and positive act of the parties evidenced by some writing. Implied trusts are those which are deducible from the transactions of the parties. (*Caldwell v. Matthewson,* 57 Kan. 262, 45 Pac. 614.) Bouvier defines an implied trust as one deducible from the nature of the transaction as matter of intent, or which is superinduced upon the transaction

by operation of law as matter of equity independent of a particular intention. (3 Words and Phrases, pp. 2611, 2612.) In *Newell v. Newell,* 14 Kan. 202, the grantee by false and fraudulent representations obtained the deed which was made with the understanding that the grantee was to sell sufficient land to pay grantor's debts and then to reconvey the remainder to him, the grantor being about to enter the military service of the United States. It was held that under the facts shown the conveyance should be set aside because obtained by fraud, and for the further reason that it was without consideration and that the defendant had lost nothing by the transaction. It was said in *Bartholomew v. Guthrie,* 71 Kan. 705, 710, 81 Pac. 491, that the conveyance was presumably made to facilitate some compromise of a pending suit, the understanding being that the grantee, their attorney employed to protect their interests, should institute and prosecute a certain suit and pay over to the grantors the fruits of the litigation. It was held in that case that the law would imply a trust so long as the title was held by the grantee or any of the proceeds when it was converted. In *Lehrling v. Lehrling,* 84 Kan. 766, 115 Pac. 556, the children wrote to the father, who had gone to Germany, to convey the land to them in order that they might borrow the money necessary to make a certain settlement arising out of divorce proceedings between him and his wife, which was done. After he had returned and been in possession of the land about fifteen years it was held that he could quiet his title for the reason that the grantees took the legal title in trust to raise the required money for the father's use and that such trust arose by implication from the circumstances shown. It was said:

"The letter and deed, however, in connection with all the circumstances, are sufficient to show a trust by implication of law. The appellants having asked for the conveyance for the purposes stated in their letter,

and their request having been complied with, a trust may fairly be implied to hold the legal title for the purposes named." (p. 770.)

In *De Mallagh v. De Mallagh*, 77 Cal. 126, 19 Pac. 256, an agent intrusted with a farm for sale received the proceeds of the produce thereof and redeemed or purchased a lot belonging to his principal, and it was held that he· should be deemed a trustee. *Kimball v. Tripp*, 136 Cal. 631, 69 Pac. 428, is another case of a conveyance being made to an agent whereby a trust was implied, although not expressed in writing. In *Koefoed v. Thompson*, 73 Neb. 128, 102 N. W. 268, the parties had been partners and had jointly purchased the land in question, each contributing one-half of the first payment, then afterwards borrowed money to complete the payment, taking a joint deed, giving two notes secured by mortgage. The defendant went into sole possession, and the plaintiff left with him a considerable amount of personal property to be sold and applied to the payment of his half of the mortgage debt and then went on a visit. When the balance of the debt became due he· executed a quitclaim to the defendant for the sole purpose of enabling him to renew the mortgage, upon a verbal agreement that he would secure the money and redeem the land from the mortgage foreclosure for their joint benefit and account for one-half the rents and profits and in due time reconvey to the plaintiff his half interest. It was held that this series of transactions involved not only a trusteeship but an agency, and that the plaintiff was entitled to recover; that the betrayal of the confidence reposed by the plaintiff was sufficient to raise the presumption that the defendant intended from the first to defraud his partner out of his interest in the land and to give rise to a constructive trust. In *Brison v. Brison*, 75 Cal. 525, 17 Pac. 689, a husband was the owner of property on which there was a mortgage, and in

order to raise money to pay it off he determined to go to Arizona and engage in business, and desired to make a will so that the property should go to his wife, but influenced by her wish to save the expense of probate proceedings and relying upon her parol promise that she would reconvey upon request, he made a deed to her. It was alleged that he was induced to make the deed by her promise, which was made with intent on her part to deceive and did deceive him. It was held that he was entitled to a reconveyance, the court finding that the promise was made without any intention of performing it and was thereby a species of actual fraud.

The foregoing are the cases mainly relied on by the plaintiff, and, except the last one, are all instances of the conveyance of the mere legal title with no intention that the actual ownership should pass. A careful examination of the petition now under consideration shows that the plaintiff made an absolute conveyance to the defendants upon the verbal agreement to reconvey if he should so request, which, technically speaking, amounts to a conveyance upon verbal conditions subsequent. While he pleads that he desired the defendants to have the property in case he should not return, still he alleges the agreement to have been that they were to reconvey if he should so request. There is no allegation that it was the intention or understanding that the property should remain his equitably and that they should hold the mere legal title until something was done or some condition fulfilled. The relations were as confidential on one side as on the other, and while it is suggested, though not alleged, that the parents were dependent on the parties for their support and that the refusal to reconvey indicates an original intention to defraud the plaintiff, it might with equal consistency be regarded as a decision on the part of the brother to go to another country to seek his fortune, and by turning the property over to

the defendants relieve himself from further care of the parents and further responsibility for the mortgage debt. So that there is nothing in the circumstances alleged which shows any duty to reconvey except the mere verbal promise. This, of course, is insufficient as a basis for an express trust (*Gee v. Thrailkill*, 45 Kan. 173, 25 Pac. 588), and also insufficient in and of itself to raise an implied trust. The Brison case, while giving considerable support to the plaintiff's contention, is dissimilar as to the facts. There the land originally belonged to the husband, and his intention to make a will so that it would all go to the wife at his death was changed by her request to make a deed and her promise to reconvey, all of which showed an intention and desire on his part to retain the real title to the property during his life. Here the land was owned jointly by the parties, and seemingly without any solicitation by the defendants, plaintiff saw fit to convey his share to them, in view of his intended departure, so that the entire property should be absolutely theirs unless and until he should at some future time return and request a reconveyance. We must hold, therefore, that the demurrer was properly sustained as to the first cause of action.

If, as the plaintiff alleges, the personal property was converted by the defendants in 1902, the action begun in 1910 was barred. Had the plaintiff alleged and relied upon a continued partnership ownership of this personalty and simply prayed for an accounting, a different rule might apply, but having elected to treat his share of the personal property as converted by the defendant more than three years before the suit, it must be held to have been begun too late. The prayer at the close of the petition for an accounting may have been intended to refer only to the money raised by the renewal mortgage, but if intended to ask for an accounting as to the personal property, it was incon-

sistent with the allegation of its conversion, which would mean an action for damages and not one for an accounting. There is no allegation that a demand for a share of the personal property was ever made or refused, or that any promise, agreement or demand was made concerning anything but the land. Hence, making the first cause of action a part of the second did not help the situation.

The third cause of action being bound up with the first, there was no error in sustaining the demurrer to the entire petition.

The judgment is affirmed.