No. 22,616.

FANNIE L. SILVERS, *Appellee,* v. E. J. HOWARD, as Administrator, etc., et al., *Appellees,* ELLEN SILVERS, *Appellant.*

SYLLABUS BY THE COURT.

1. TRUSTS — *Absolute Deed* — *Parol Agreement to Reconvey* — *Express Trust Not Created.* A mother and son owned undivided interests in a tract of land. The son conveyed to his mother, to enable her to mortgage the land as security for borrowed money, by a deed absolute in terms, but accompanied by an oral agreement on the part of the mother to reconvey. The relations between mother and son were in fact confidential and fiduciary. After the son's death, the mother sold the land as her own, and denied that his widow, his sole heir, had any interest in it. *Held,* the parol agreement was insufficient to create a trust, because of section 1 of the trust statute, which provides that no trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing (Gen. Stat. 1915, § 11674).

2. SAME. In the absence of fraud, accident, or mistake, the grantor in a deed absolute in terms may not show a parol agreement of the grantee to hold the land in trust for the grantor, except in cases involving payment of purchase money by one person and title taken in another, under section 8 of the trust statute (Gen. Stat. 1915, § 11681).

3. SAME—*Repudiation of Trust—No Fraud.* Mere repudiation of the trust contemplated by an oral agreement, ineffectual for the purpose because of the trust statute, does not constitute fraud, either actual or constructive.

4. SAME—*Fiduciary Relation of Grantor and Grantee in Deed.* If a fiduciary relation exist between the grantor and grantee in a deed absolute, and the deed be induced by the relation for a trust purpose, breach of the confidence reposed may amount to constructive fraud, from which a trust may arise by implication of law.

5. SAME—*Implication of Trust—Evidence.* If such a conveyance be accompanied by an oral trust agreement, the agreement may be consid-

ered as one of the circumstances of the case. It may aid implication
of a trust, but it is not sufficient, standing alone, to raise the im-
plication.

6. SAME—*Findings of Fact—Trust by Implication of Law.* Findings of
fact concerning the subject of paragraph 1 of this syllabus considered,
and held sufficient to sustain a trust arising by implication of law.

7. SAME—*Limitation of Action.* Findings of fact considered, and held to
show the action was not barred by the statute of limitations.

Appeal from Shawnee district court, division No. 1; ROBERT
D. GARVER, judge. Opinion filed May 8, 1920. Affirmed.

*A. E. Crane,* of Topeka, for the appellant.

*J. J. Schenck,* and *J. B. Larimer,* both of Topeka, for the ap-
pellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to enforce a trust relating
to land. The plaintiff prevailed, and the principal defendant,
Ellen Silvers, appeals.

The story of the case is told by the findings of fact, which
follow:

"1. On the 25th day of March, 1909, Emanuel Silvers departed this
life, intestate, being at the time of his death the owner in fee simple of
the east one-half of the southeast quarter and all that part of the east
one-half of the northeast quarter lying south of the Union Pacific Rail-
road right of way, all in section two (2), township eleven (11), range
thirteen (13), Shawnee county, Kansas.

"2. That the said Emanuel Silvers left surviving him as his sole and
only heirs at law Ellen Silvers, defendant herein, his widow, and four
children, Clarence Silvers, Emmett Silvers, Frank Silvers and Anna
Silvers; that at the death of the said Emanuel Silvers the said Clarence
Silvers inherited and became the owner and entitled to the possession of
an undivided one-eighth interest in and to all of the real estate herein-
before described.

"3. At the request of his father and mother, Clarence Silvers re-
mained on the premises above described during the last few years of his
father's life, and at the request of his mother he remained upon the
premises until the time of his death, which occurred September 19, 1914.

"4. Prior to the death of Emanuel Silvers his son Frank went to the
state of Idaho and engaged in the sheep-raising business, and after the
death of Emanuel Silvers, another son, Emmett, also went to the state of
Idaho, and there joined his brother Frank in the sheep-raising business.
Frank Silvers and Emmett Silvers desired to use some money in their
business, and Ellen Silvers, their mother, defendant herein, agreed to

make them a loan for the sum desired. I. B. Alter, a banker of Rossville, and a friend of the family, was consulted by Ellen Silvers in regard to loaning her the sum she desired to furnish her sons in Idaho. Said Alter informed Ellen Silvers that a lower rate of interest could be procured on a real-estate loan, and suggested to her and to Clarence Silvers that all of the children join in a deed to their mother and place the title in her, so that she could execute a mortgage on the land in question, and that when the mortgage was paid off the mother could then reconvey to her children their respective interests. This arrangement was adopted, and Clarence Silvers and the other children executed deeds to Ellen Silvers, their mother, for the land in controversy. On October 12, 1909, Ellen Silvers thereupon placed a mortgage upon said land, and sent the proceeds to her sons in Idaho. No consideration passed from the said Ellen Silvers to the said Clarence Silvers at the time of the execution of said deed, or at any other time, and said deed was made for the purpose of enabling Ellen Silvers to place a mortgage thereon as suggested by I. B. Alter, and for no other purpose.

"5. At the time of the execution of said deed the relations between the said Clarence Silvers and Ellen Silvers were confidential and fiduciary.

"6. After the execution of said deed, said Clarence Silvers remained upon said premises, farming and managing the same in all respects the same as before the execution of said deed. In 1912, Clarence Silvers was married to Fannie L. Silvers, the plaintiff herein, and took her to his home on said land, where they lived until the time of his death. While residing on said premises, and after the execution of said deed, Clarence Silvers made extensive and valuable improvements upon said premises, expending therefor in the neighborhood of four thousand dollars, and also paid the taxes annually up to the time of his death.

"7. It does not appear from the evidence that any demand was ever made by Clarence Silvers for a reconveyance of said premises from his mother, nor that his mother ever denied the equitable interest of her son in said premises prior to his death.

"8. Clarence Silvers died on the 19th day of September, 1914, intestate, leaving as his sole and only heir at law the plaintiff herein, Fannie L. Silvers, his widow.

"9. That on or about the —— day of October, 1917, said Ellen Silvers repudiated the arrangement made at the suggestion of I. B. Alter, as hereinbefore found, and sold said premises to L. F. Page for the sum of $19,000, and the said Ellen Silvers thereupon immediately divided the proceeds of said sale between herself and her surviving children in the shares to which they would have been entitled as heirs of Emanuel Silvers.

"10. The premises in controversy were of the reasonable value of $19,000 at the time of the sale in October, 1917.

"11. Clarence Silvers never parted with the equitable title to his undivided one-eighth interest in the premises in controversy, and the deed from him to his mother was for the purpose of enabling her to place

Silvers v. Howard.

a mortgage on said premises and to loan the proceeds from said mortgage to Frank and Emmett Silvers, and for no other purpose.

"12. During all the time that Clarence Silvers was farming the land in controversy, after the death of his father, he received all the income therefrom and made no accounting to anyone therefor.

"13. The defendant, Ellen Silvers, did not procure the deed from Clarence Silvers, heretofore found, by means of any fraud practiced upon said Clarence Silvers at or before the execution of said deed, as claimed in the amended petition.

"14. In the fall of 1914, after the death of Clarence Silvers, plaintiff was duly notified by Emmett Silvers that she had no right, title or interest in or to said real estate, and plaintiff made no claim to an interest in said real estate other than for her personal money expended in building a silo, which claim was allowed, and she was permitted to remove and sell the same.

"15. This suit was not brought by the plaintiff until July 22, 1918, more than three years after plaintiff was notified that she had no right, title or interest in the aforesaid real estate.

"16. Immediately after the death of Clarence Silvers, Emmet Silvers, acting as the agent of Ellen Silvers, took charge of the land in controversy and rented the same, and excluded the plaintiff, Fannie Silvers, from the possession thereof."

The defendant requested fifteen findings of fact, all of which were adopted in substance by the court, excepting these:

"6. That on the 12th day of October, 1909, Clarence Silvers, by a quitclaim deed, duly conveyed all his right, title and interest in and to the defendant, Ellen Silvers, upon the consideration of ten dollars ($10) expressed in said deed.

"7. That at the time of the execution of said deed there was no contract between Ellen Silvers and Clarence Silvers that she was to reconvey the property to him at any time thereafter.

"14. That Ellen Silvers, at the time of making the deed to the defendant, L. F. Page, just prior to bringing this action, was the owner of all of the property described in finding No. 2, and entitled to all of the proceeds thereof."

Requested finding No. 6 differs from the court's finding that Clarence deeded to his mother, merely in the respect that the requested finding in effect denies that any equitable title remained in Clarence. That was the substance of the lawsuit. Requested finding No. 14 was likewise more of a decision of the controversy than a finding of fact. Requested finding No 7 was rejected because the court believed the testimony on which its own finding No. 4 was based.

It is argued that finding No. 4 does not state that an agreement to reconvey was in fact made, the language being "the

mother could then reconvey," etc. The finding, however, is interpreted by the first conclusion of law stated by the court, which is argumentative in form, and refers to "the parol agree-ment entered into on the suggestion of I. B. Alter." The fact that reconveyance was part of the arrangement was elicited from the witness Alter by a leading question by the court it-self, calling attention to 'the specific matter.

Finding No. 5, that at the time Clarence deeded to his mother the relations between them were confidential and fidu-ciary, is assailed as contrary to the evidence. The farm was situated near Rossville. During the last few years of his father's life Clarence remained on the farm, at the request of his father and mother. After his father's death he continued to stay there, at the request of his mother, who then owned an undivided half, while he had but one-eighth. After making the deed to his mother, and without any contract fixing his rights or accountability, Clarence managed the farm, paid taxes, made many lasting and valuable improvements, and appro-priated the proceeds, except that he gave his mother and sister enough to live on. They lived in Rossville, and frequently went to the farm to visit, and to get butter and eggs and other supplies. Clarence purchased a horse and buggy for them to use. At the time of his death, Clarence had thirty-one head of horses and mules, twenty or thirty head of cattle, and a num-ber of hogs, all acquired while he was working the farm. It was necessary for him to borrow considerable money, and his mother said she was willing her interest in the farm should stand good for Clarence, because he had always provided for the family. Sometimes the plaintiff became discouraged at the outlook. On one occasion her mother-in-law said to her:

"You know, Fannie, Clarence has been a good boy, and worked all his life and kept us. We aren't going to let you want. Clarence expects some day to get that home; the boys don't want the farm, and Annie don't want the home; everything will come out all right."

The plaintiff herself furnished the money to build the silo on the farm. When she wrote the check for it, she said to Clar-ence, "Maybe we had better have mother O. K. this." Clarence laughed and said, "My mother won't go against me." During his lifetime the occasion never arose when it seemed necessary that Clarence and his mother should have writings between

Silvers v. Howard.

them in reference to their property and business. While it may not be proper to read all of this evidence into the relations of mother and son in October, 1909, it is significant that while he lived there was no break or change in the trustful relationship which, for the purposes of this suit, commenced in the son's yielding to his mother's request to stay on the farm after his father's death. The result is, finding No. 4 is well sustained by the evidence, and the court regards all the facts as settled by the findings of fact.

Sections 1, 6 and 8 of the statute relating to trusts read as follows:

"§ 1. No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing.

"§ 6. When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections.

"§ 8. The provisions of the section next before the last [§ 6] shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or where such alienee in violation of some trust shall have purchased the land with moneys not his own; or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase-money or some part thereof." (Gen. Stat. 1915, §§ 11674, 11679, 11681.)

Sections 6 and 8 relate to those purchases of land which involve consideration paid or furnished by one person and title taken in another, and have no application to the present controversy. Therefore, section 1 alone is to be considered.

The defendants say the trust in this case, if any, was an express trust, and the agreement by which it was created was not in writing. The plaintiff says the trust arose by implication of law.

In the case of *Morrall v. Waterson,* 7 Kan. 199, the syllabus reads:

"In the absence of fraud, mistake or accident, the grantor, in an absolute conveyance reciting a valuable consideration and acknowledging its receipt, and where it is admitted a valuable consideration was actually received, cannot show a parol agreement that the grantee was to hold the land conveyed in trust for his benefit."

The sentence, "and where it is admitted a valuable consideration was actually received," was inserted to conform the decision to the facts of the case. It may be eliminated without affecting the rule of law, because absence of consideration does not supply the writing which the statute requires.

"The plaintiff, as the holder of the school-land certificate, was practically the owner of the land, subject to the claim of the state for the unpaid purchase price. He assigned the certificate to his father for a recited money consideration. This amounted to a conveyance of the title, and in the absence of fraud or mistake is regarded as conclusive evidence of the transfer of the beneficial interest, precluding a showing of want of consideration for the purpose of establishing an implied trust." (*Goff v. Goff*, 98 Kan. 201, 204, 158 Pac. 26.)

Unless, therefore, there were fraud, accident or mistake in the transaction under analysis, the deed was not impeachable by parol evidence which would contradict its legal effect as an absolute conveyance. (*Ingham v. Burnell*, 31 Kan. 333, 2 Pac. 804; *Gee v. Thrailkill*, 45 Kan. 173, 25 Pac. 588; *Rogers v. Richards*, 67 Kan. 706, 74 Pac. 255; *Blackwell v. Blackwell*, 88 Kan. 495, 129 Pac. 173; *Clester v. Clester*, 90 Kan. 638, 135 Pac. 996.)

The conveyance was not the result of accident or mistake, and the plaintiff must obtain relief, if at all, on the ground of fraud. The petition charged actual fraud. It was alleged the mother procured the deed on a false promise which, at the time it was made, she had no intention of keeping. The court found otherwise (finding No. 13).

The statement may be found in opinions of the courts that trusts may be raised in equity with respect to property acquired without fraud, when it would be against equity that·it should be retained. In that form the statement furnishes no rule for the decision of controversies. Going further, it is sometimes said that a constructive trust will arise whenever it would be inequitable for the person holding the legal title to retain the property. The statement is too broad, and if applied literally, would nullify the first and sixth sections of the trust statute. However inequitable and morally reprehensible it may be that property conveyed upon an express oral trust should be retained in violation of the agreement, a trust may not, under those circumstances, be engrafted upon a deed absolute in its terms, because if that were the rule, deeds would

no longer be valuable as muniments of title. In the opinion of the legislature, it is better for the social order and general welfare that a few persons, who might not observe the statute, should suffer hardship, than that the security of all titles should be destroyed. Therefore, it is held that mere repudiation of the oral agreement creating the trust does not constitute fraud, either actual or constructive. (*Goff v. Goff*, 98 Kan. 201, 158 Pac. 26.) This being true, how did fraud enter into the transaction under consideration, and if there were fraud, what was its nature? The answer is, constructive fraud, arising from abuse of the confidential relation existing between grantor and grantee.

The mere fact that a conveyance is made by a child to a parent or by a parent to a child, without consideration, is not enough to raise a trust by implication. (*Clester v. Clester*, 90 Kan. 638, 135 Pac. 996.) There must be a confidential relation, a transaction induced by the relation, and a breach of the confidence reposed. When those conditions are satisfied, the law implies a trust. The principle is illustrated by the decision in the case of *Bartholomew v. Guthrie*, 71 Kan. 705, 81 Pac. 491. In that case the grantors conveyed land in litigation to their attorney, to enable him to deal with it advantageously, under an oral agreement that he would account for the fruits of the litigation. The attorney was employed to protect the interests of the grantors. The law declares the relation of attorney and client to be fiduciary. The deed was a step in furtherance of the purposes of the employment, and refusal to account for the fruits of the litigation constituted constructive fraud, raising a trust outside the statute, by implication of law. The opinion of the court did not dilate on the fiduciary character of the relation between attorney and client. To have done so would have been to pad the opinion. When the fact of the relation was stated, the quality which the law attaches to it was stated, and it was sufficient for the court to say, "The facts stated are such that a trust arises by implication of law." (p. 710.)

The principle under consideration is further illustrated by the decision in the case of *Lehrling v. Lehrling*, 84 Kan. 766, 115 Pac. 556, in which a father made a deed to his children, to

enable them to raise money upon it for his benefit. In that case the confidential relation between the parties to the deed was the fact which controlled the decision:

"The father was in Germany, and the children were at home where the business must be done. The plan did not seem unreasonable. Expenses would necessarily accumulate if there should be delay in executing the mortgage and procuring the loan. The father was in trouble, far from home, and naturally desired to save as much of his property as possible after satisfying the proper claims of his wife; the necessity of speedy action was apparent and was emphasized in the letter. He acted promptly, as his children requested, and in the confidence that a father may be presumed to have in his children." (p. 769.)

To these facts the law as expounded in the case of *Wood v. Rabe et al.*, 96 N. Y. 414, was applied, citation of further authority being regarded as unnecessary. The statute of frauds and the statute of trusts of the state of New York, referred to in the opinion of the court, are essentially the same as the statutes of this state relating to the same subjects. The facts of the case and the conclusion of the court are summarized in the headnote, which reads as follows:

"The interest of plaintiff in certain real estate, which interest was of the value of about $10,000, was sold on execution issued upon a judgment against him, and the time for redemption by him expired before he learned of the sale. At the request of his mother and upon the advice of her attorney, his former guardian, he having a short time before arrived of age, and for the purpose of enabling her to redeem for his benefit, and upon her oral promise to hold the interest acquired and reconvey to him upon being paid her loans and advances, he confessed a judgment to her for $2,000, which sum she claimed she had loaned to him, but which he insisted was a gift. By virtue of this judgment the mother redeemed and received the sheriff's deed, but refused to convey to plaintiff on demand and tender of the amount of her judgment and of the advances made by her with interest. In an action to enforce the oral agreement, *held*, that it was upon a good and sufficient consideration; and, as it appeared that plaintiff was induced to acquiesce, not by the promise alone, but by it and the confidential relation conjoined, it could be enforced in equity, and the statute of frauds could not be invoked as a bar to relief." (Syl. ¶ 5.)

In the opinion it was said:

"It was on the part of the son the case of a confidence induced, not by the bare promise of another, but by the promise and the confidential relation conjoined. The confidence, in fact, had its spring and origin in the relation, and that relation was a controlling ingredient moving his action." (p. 426.)

Silvers v. Howard.

A criticism of the Bartholomew and Lehrling cases contained in an address before the Kansas state bar association, on the subject, "Trust Estates in Kansas" (Proceedings, 1916, p. 69), fails to take note of the fact which controlled the decision in each instance—the confidential relation between the parties to the conveyance. Both decisions are well supported by authority. (Note, 39 L. R. A., n. s., 923, 926.)

In the case under decision, it is clear that the filial and the business relations of Clarence Silvers to his mother were of the most trustful and confiding kind. To his mind his deed to his mother did not affect his interest in the land, and he proceeded to stock it and farm it and improve it, to marry and make it his homestead, all on what seemed to him good security. There was, to be sure, a promise that his interest would be reconveyed to him, but the essence of the security consisted in the fact that he was dealing with his mother.

In order to clarify the subject a little more, a word may be added relating to the place of the oral agreement to reconvey in cases of this character. A conveyance made with an accompanying oral agreement to reconvey is disclosed. The statute not having been observed, no trust was created by virtue of the conveyance and the oral agreement. That, however, is not necessarily the end of the matter. The circumstances may have been such that a trust arises by implication of law, according to the rules which have been laid down. In considering that subject, the oral agreement is simply one of the circumstances of the case. It must be accompanied by other circumstances which, either by themselves or in connection with the oral agreement, establish fraud, actual or constructive, or other equitable basis for raising a trust by implication. The trust by implication may have the same ultimate effect on the rights of the parties as would result from enforcement of the oral agreement. In that event the oral agreement may be said to aid the implication, but it is not sufficient, standing alone, to raise the implication. (*Franklin v. Colley,* 10 Kan. 260; *Bartholomew v. Guthrie,* 71 Kan. 705, 710, 81 Pac. 491.) In this instance the proof was that under the influence of the confidential relation the conveyance was made for a specific purpose. When the purpose was accomplished, the grantee held the legal title for the benefit of the grantor, whether there were an agreement to reconvey or not.

The defendant pleaded the statute of limitations, and insists that findings 14, 15, and 16 show that the action was barred. The court found that repudiation of the trust occurred in October, 1917 (finding No. 9), and if so, the action was commenced in due time. Finding No. 14 does not state that Emmett Silvers, acting as the agent of Ellen Silvers, notified the plaintiff that she had no interest in the farm, and he could not commit Ellen Silvers to a renunciation of trust without her authority. Finding No. 16 relates to the subject of possession. Ellen Silvers was entitled to be admitted to possession as a coöwner. Emmett Silvers, acting as her agent, took full possession, and excluded the plaintiff, thereby trespassing upon the plaintiff's right of possession; but the finding does not extend the agency to include authority to deny equitable title to a share of the land. The result is that findings 14 and 16 fall short of showing repudiation of the trust by Ellen Silvers, which occurred as a result of the conduct described in finding No. 9.

The judgment of the district court is affirmed.