No. 22,994.

ROXANA E. RICE et al., *Appellees*, v. M. E. RICE, *Appellant*.

SYLLABUS BY THE COURT.

TRUST IN REAL ESTATE—*Absolute Deed from Parents to Son—Oral Agreement—Trust by Implication of Law.* In an action to establish a trust in real estate, brought by parents against a son to whom they conveyed all their real estate, accompanied by an oral agreement that the son should manage the property, pay off the indebtedness, support the family, hold the title to the property during the lifetime of his parents, and upon their death divide the same equally between himself and his sister, the evidence and findings are considered, and held sufficient to sustain a trust arising by implication of law. (*Lehrling v. Lehrling*, 84 Kan. 766, 115 Pac. 550; *Silvers v. Howard*, 106 Kan. 762, 190 Pac. 1.)

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed July 9, 1921. Modified and affirmed.

*George K. Melvin*, and *R. E. Melvin*, both of Lawrence, for the appellant.

*S. D. Bishop*, and *Mina P. Dias*, both of Lawrence, for the appellees.

Rice v. Rice.

The opinion of the court was delivered by

PORTER, J.: The action was one to establish and enforce a trust in real estate. Plaintiffs are the parents of defendant. In the early 90's the father, then 65 years of age, owned a residence in the city of Lawrence and 400 acres of pasture lands in Greenwood county. The petition alleged that about that time, the father becoming financially involved, it was orally agreed at a family council that he should deed all his property to the defendant, then a few months less than 21 years of age, to be held by him together with the rents and income of the property in trust for the parents and with the understanding that during their natural lives they should occupy the dwelling house and that the son should keep it in good repair, pay all taxes, liens and incumbrances against all the property, and support his parents as long as they lived; that absolute deeds of conveyance were made to the defendant for the property; and that he had received and appropriated the rents and profits of the farm lands and had not at all times properly supported his parents, and had recently repudiated his promise to hold the property in trust for them by advertising the homestead for sale as his own and against their wishes and contrary to the trust agreement.

The defendant answered, admitting the execution of the deeds, alleging that he paid a fair price and consideration for all the property which was of a value not to exceed $5,000 at the time the conveyances were made and was subject to mortgages and tax liens. He denied the existence of any trust agreement or understanding as claimed in the petition, and asserted that he voluntarily began to help support his parents in 1896 and had practically supported and cared for them since that time; that he did this of his own free will and because the plaintiffs were his parents and not because of any contract. The answer alleged that there had never been any trouble between the parties until the defendant announced his intention of marrying, and that no question was ever raised by plaintiffs concerning his right to the property until a married sister, (who left her husband in Massachusetts and came to Lawrence about four years prior to the beginning of the suit)

made trouble between the defendant and his parents. He stated further that in substance and effect he had lived up to the alleged terms and conditions of the contract pleaded by the plaintiffs, and, expressly denying that any such contract existed, further alleged that should the court determine to the contrary, he was willing to continue to support his parents, but his parents only. The answer pleaded as a further defense the general statutes of limitation.

The trial court made findings of fact, in substance, as follows:

1. The plaintiffs are husband and wife. The husband is 94 years of age, and the wife is 87. The defendant is their son. They have one other child, a daughter, who is of full age and married.

2. In the late 70's, M. C. Rice, the father, owned property in the state of New York which he exchanged for a home in the city of Lawrence, now occupied by plaintiffs, and for 800 acres of land in Greenwood county, Kansas, and shortly thereafter with his wife and two children removed to Lawrence. In a few years he had lost half of the 800 acres, and, while not insolvent, found himself financially embarrassed. The taxes on the property were delinquent; some judgments were rendered against him; and generally he was not making a success. This condition of affairs greatly disturbed the entire family and the question was a matter of frequent and earnest consideration by the family. Witnesses for the plaintiffs referred to these consultations as "family councils." While perhaps no direct and complete arrangement was arrived at, at any one time, still their discussions finally crystallized into this conclusion: That the entire holdings of Mr. Rice be turned over to his son, the defendant in this action. The son was then perhaps twenty to twenty-one years of age, and it was agreed that he should manage the property, pay off the indebtedness as rapidly as he could, hold the property during the lifetime of his father and mother, support the family, and at the death of the father and mother, divide the property equally between himself and his sister. This the young man undertook to do, and deeds were accordingly executed. The indebtedness at that time was in the neighborhood of $2,000, and the young man had not then completed his education. In

addition to his studies, he was a tutor and earned a small amount of money in this way, and most faithfully devoted himself towards the liquidation of this indebtedness and to the carrying of the load, which was considerable of a burden.

3. In 1913 the defendant, who was then about 35 years of age, announced his intention to marry. The mother and sister objected because they seemed to feel that he should remain at home and continue to be the head of the family. The defendant married and moved to a home of his own, and at all times up to the beginning of this suit has contributed towards the support of his father and the family. The sister meanwhile had married and left the home but she has returned home during the last two or three years without her husband. The evidence does not show whether the separation from her husband is permanent or merely temporary.

4. During the years since the land was deeded to the defendant he has expended in excess of what he has received, in paying indebtedness, in improving the land and the home, and in support of the family, about $5,155. This was expended with the full knowledge and consent of the other members of the family and in harmony with the arrangement made immediately prior to the deeding of the property to the defendant.

5. About the time of the defendant's marriage, he requested his mother to live with some other relative of hers and to permit him and his wife to keep the homestead. The mother declined to do this and just before the commencement of this action, the defendant advertised the home for sale, his explanation being that he thought he could dispose of the property and procure another better fitted for the father and mother during their old age. His action in this respect was the immediate cause of the suit being filed. The defendant upon the trial of this action, denied that there was any trust arrangement made at the time the deeds were executed and delivered, claiming that the indebtedness was so near the value of the property that his father and mother despaired of saving anything from the wreck, and turned the whole matter over to him to hold and own and pay out if he could.

The court made the following conclusions of law:

1. The arrangement between the father and mother and the defendant, leading up to and including the execution and

delivery of the deeds in question, constituted the defendant a trustee and the transaction a trust, resulting from the arrangement, and this trust should be administered under the direction of the court.

2. The defendant, having expended in excess of what he has received in the execution of the trust up to the present time $5;155, should be repaid that amount out of the property, and should have a lien upon all of the property for the security of its payment, but to enforce that payment at this time would probably result in the total destruction of the object of the trust, namely, to secure the old people support during the remainder of their lives. The enforcement of the payment of this amount is now postponed until the death of the father and mother, but it should bear 6 per cent interest from this date.

3. If the defendant shall signify his willingness to continue the trust through to the end without compensation, the court will permit him so to do; otherwise the court will appoint another as trustee.

The court ordered the defendant to file a report within ten days showing what money he now has in his hands available for the delinquent taxes, when further orders would be made by the court. It was ordered that in the execution of the trust the entire net proceeds from the property should be paid to plaintiffs for their support and the court would make subsequent orders with reference to any excess over the amount necessary to support the father and mother. The defendant was required to pay the taxes each year promptly without further order and the costs of the litigation from the proceeds of the property at such times as the court might direct.

The defendant appeals.

Applying a liberal construction to the petition, we think it was not subject to demurrer on the ground that it showed that the cause of action was barred by the statute of limitations. While there are some averments which, taken literally, would indicate that plaintiffs were relying upon an absolute failure of defendant to furnish any support whatever to them, and upon the fact that he repudiated the trust immediately after the execution of the conveyances, yet the petition shows that the principal inducement for bringing the action was that a few days prior thereto the son had advertised the home for

Rice v. Rice.

sale as his own.  As a matter of fact, no statute of limitations was a bar.  The answer alleged and the evidence showed that from about the time the first conveyances were executed the defendant contributed to the support of his parents and that from 1896 to the commencement of the action he had furnished practically all their support.  In their testimony both parents belittled the amount of contributions made by the son towards their support and caring for the property.  The mother's admissions showed that she knew very little about the source of the funds which the son advanced to pay tax liens and other incumbrances on the property in Greenwood county and upon the residence property.  The father claimed that he furnished the son all the money which the latter advanced to pay these claims but he was not able to corroborate his statements by checks, drafts or other memoranda.  He was unwilling to concede that he was not a success in a business way and blamed the family for inducing him to convey the property to the son. The trial court doubtless made allowances for the defective memory caused by the infirmities of age.  The court believed the statements of the defendant as to the expenditures made by him.  In the course of the trial, the court said:

"But I am satisfied that this young man has paid out this money there, from his books, running away back in the years.  They are not new books.  It is really pathetic to see how the young man pieced out his small income, and kept track of it, too.  A few pennies here and a few dimes here, and to my mind, he is entitled to a good deal of credit for what he has done, and his father and mother are entitled to a good deal of credit, too.  It is just one of those occasions where changed conditions late in life, people fail to fit in and take up the work they laid down in another state and make a success of it.  But this property must be devoted primarily to the comforts of these old people."

The main contention is that the action cannot be maintained because of the statutory provision that "no interest concerning lands except such as may arise by implication of law shall be created, unless in writing."  (Gen. Stat. 1915, § 11674.) Nevertheless, we think sufficient facts were disclosed to support a finding of an implied trust which is excepted from the statutory rule above quoted.  In *Lehrling v. Lehrling,* 84 Kan. 766, 115 Pac. 556, it was said:

"Trusts are often declared in transactions between persons standing in confidential relations, as parent and child, that would not be implied between strangers." (p. 770.)

The opinion quotes the following extract from 1 Perry on Trusts and Trustees, 6th ed., § 112:

"Implied trusts are those that arise when trusts are not directly or expressly declared in terms, but the courts, from the whole transaction and the words used, imply or infer that it was the intention of the parties to create a trust. Courts seek for the intention of the parties, however informal or obscure the language may be; and if a trust can fairly be implied from the language used as the intention of the parties, the intention will be executed through the medium of a trust."

The whole question is discussed in *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1, where it was ruled:

"If a fiduciary relation exist between the grantor and grantee in a deed absolute, and the deed be induced by the relation for a trust purpose, breach of the confidence reposed may amount to constructive fraud, from which a trust may arise by implication of law." (Syl. ¶ 4.)

It was held in the opinion further that the agreement, while not sufficient, standing alone, to raise the implication of a trust, may be considered by the court as one of the circumstances and that it may aid implication of the trust. There was evidence in the present case to warrant a finding that a confidential relation existed between the parties to the conveyance and, moreover, that such relation induced the making of the agreement. While it has been held that the fact that a conveyance is made by a parent to a child without consideration is not, itself, sufficient to raise a trust by implication, yet the fact that there was a confidential relation between the parties is one of the facts to be considered, and where the confidential relation is shown to have induced the transaction and there has been a breach of the confidence reposed, the courts may imply or infer an intention of the parties to create a trust. (*Lehrling v. Lehrling,* supra.) It is said, however, that the court made no such finding. So far as the record discloses there was no request for specific findings and therefore upon the undisputed facts it must be held that a finding that a fiduciary relation had existed between the parties is included in the general judgment. For reasons not recited in the record it appears that the case had to be tried in one day, and that the judge expressed his regrets that more time had not been allowed and that there was no opportunity left for argument of counsel. After the court made the findings of fact and conclusions of law, the defendant asked that certain other

Rice v. Rice.

facts be found and that certain findings be set aside. The motion was overruled.

The court found that the defendant had advanced $5,155, and allowed him a general lien upon all the property for that amount with interest at 6 per cent from the date of the judgment. It is clear, in our opinion, that he is entitled to interest from the time the various sums of money were advanced. In another respect the judgment must be modified. It is conceded that the defendant, several years ago, purchased a lot 25 feet in width adjoining the home place in order to prevent the erection of a church building that would shut off the light and air from the residence. The plaintiffs conceded they had no claim to any interest in the strip and they announced their willingness to permit defendant to retain the title thereto. Beyond question this strip of land was purchased for the purpose of enhancing and protecting the value of the residence property. There is no question about the defendant's good faith in making the purchase. The evidence showed also, that standing by itself, it is of little value. The defendant was allowed for repairs and improvements made on the house itself and, in our opinion, is justly entitled to have included in his lien the amount he paid for the purchase of this ground together with interest from the time the payment was made.

There is a provision in the judgment that defendant's lien shall not be enforced against the property during the lifetime of either of the parents. This should be modified so as to read "without the further order of the district court." The decree provides that the court shall have jurisdiction of the trust for the purpose of making whatever orders may be found necessary from time to time, and in the future upon proper showing the court may conclude that the interests of all parties would be subserved by a sale of the residence or other property.

The judgment will be modified in these respects, and as modified, affirmed.