THOMAS W. BARGER, APPELLANT, V. CITY OF TEKAMAH, APPELLEE.

FILED APRIL 23, 1935. No. 29239.

*Maher & Carrigan,* for appellant.

*Orville Chatt* and *Keith Hopewell, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and LOVEL S. HASTINGS and LIGHTNER, District Judges.

LIGHTNER, District Judge.

Suit by plaintiff for an injunction to prevent the city from maintaining a pump-house, pumps, machinery and structures in the street adjacent to plaintiff's real estate. The finding and judgment were for defendant and plaintiff appeals. Plaintiff purchased a block of unimproved real estate in Tekamah, August 27, 1930, for $800, and in December, 1932, brought this suit.

It appears from the evidence that the block now owned by plaintiff is half a block from the north boundary of the city of Tekamah and a number of blocks from the business district and had a value at the time of trial of from $600 to $1,000; that, when plaintiff purchased it, it was wholly unimproved but the plaintiff has since placed a small frame structure upon it 30 by 20 feet in size, referred to in the pleadings and evidence as a shanty or shack; that the west part of the block slopes steeply to the east and the east part is flat; that this block has never been used for residential or business purposes, but has been farmed and pastured, and that at times the

east side has been banked up to form a skating place and a place from which to cut ice; that the block is not desirable residence property and is far away from the business part of town; that forty or more years ago the city began using the streets adjacent to the southwest corner of the block for wells, a pump-house and other machinery in connection with the water service of the city; that these pumps are operated by electric machinery which causes some vibration and noise; that a tornado or cyclone in May, 1930, blew down the original pump-house, and that a new pump-house much smaller in dimensions was constructed on the old site, and that part of the old foundation, or at least the outlines of it, still exist; that the cost of moving the city property from its present location to another would be in the neighborhood of $20,000; that there is very little travel on the streets adjacent to the southwest corner of this block, and that there is ample room for such travel as there is, and sufficient space for plaintiff's egress and ingress; that the structures in question interfere in only a minor degree with plaintiff's view and still less with his light and air; that the value of plaintiff's property is depreciated very little, if any, by the structures in question; that the vibration and noise complained of are slight and are not noticed by others who live in about the same locality. While some of these propositions were controverted, especially as to whether the existence of the structures depreciated the value of plaintiff's property, the weight of evidence sustains all the foregoing.

There was evidence to the effect that persons traveling on the street west of plaintiff's block would not notice the structures in question; that plaintiff's shack or shanty above referred to also extends out into the street, and that an outhouse 4 by 4 used in connection with it is entirely in the street. Thirteenth street east of plaintiff's block is a well-traveled, paved street or highway, but the other streets surrounding his block are not extensively used, since there are very few people living in the locality west and north of plaintiff's block.

Plaintiff sets forth a great many propositions of law in his brief to the effect that it is the duty of the city to keep the streets, public highways and alleys open and in repair and free from nuisance, and that any obstruction in the street is a nuisance, and that prescription or lapse of time cannot be relied on to establish a right to maintain a public nuisance. There is no doubt respecting the soundness of these propositions of law in a situation to which they apply. The question here, however, is if plaintiff and his predecessors in title can do nothing for over forty years, during which time the city has established these structures, can he then resort to the extraordinary remedy of injunction to cause their removal at a large cost to the city while the injury to the plaintiff is comparatively small? Plaintiff cites section 17-507, Comp. St. 1929, to the effect that the city council shall cause the streets and alleys to be kept open and in repair and free from nuisance. The same governing authorities may vacate any street, avenue, or alleys. Comp. St. 1929, secs. 17-456, 17-457; *Lee v. City of McCook*, 82 Neb. 26; *Enders v. Friday*, 78 Neb. 510. While the city acted irregularly in thus devoting the public streets to a purpose foreign to their original use, it has been in the continuous, open and notorious possession of the part of the streets now referred to for over forty years. In *Severson v. McKenzie*, 122 Neb. 827, it was said by Chief Justice Goss: "We call attention to another rule which we think may well be invoked. 'Courts of equity have inherent power to refuse relief after undue and inexcusable delay independent of the statute of limitations.' *Hawley v. Von Lanken*, 75 Neb. 597. This followed the opinion of the supreme court, by Mr. Justice Harlan, in *Abraham v. Ordway*, 158 U. S. 416, in which he said: 'Independently of any limitation for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done in the particular case by granting the relief asked.' "

The author of 3 Dillon, Municipal Corporations (5th ed.) sec. 1194, after reviewing the authorities, comes to the conclusions hereinafter stated. He refers to the case where a third person is asserting an interest in a public street, but we do not believe the rule would be less favorable to the municipality itself. The municipality itself has no right to appropriate the street for any use entirely inconsistent with street purposes. 44 C. J. 938, and many authorities cited in the notes. But, as appears from the quotation from Dillon, the courts at times recognize an estoppel *in pais* in favor of third persons, and the reasons given in Dillon apply, it seems to us, in favor of the municipality. The quotation referred to from section 1194, Dillon, is as follows: "A (municipal) corporation does not own and cannot alien public streets or places, and no mere laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public. It will perhaps be found, that cases sometimes arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes. It is unsafe to recognize such a principle. But there is no danger in recognizing the principle of an estoppel *in pais* as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require."

In a note which accompanies the text is a further discussion as follows: "The principle of estoppel *in pais* has been applied to exceptional cases where the elements calling for its exercise appear to have been an abandonment of the public use for the prescriptive period, inclos-

ure and expensive improvements, such as large and costly buildings, or acts of the municipality inducing the abutter to believe that there is no longer any street, and the expenditure of money in reliance upon the acts of the municipality. The absolute *bona fides* of the abutter or adverse possessor is a most important factor where an estoppel *in pais* is claimed. The acts relied on must be of such character as to amount to a fraud, if the city were permitted to claim otherwise."

The judgment of the district court is right and is

AFFIRMED.