ANDREW KOZINA, APPELLANT, v. J. B. WATKINS LUMBER
COMPANY ET AL., APPELLEES.
20 N. W. 2d 606

FILED NOVEMBER 23, 1945.   No. 31947.

*Anson H. Bigelow,* for appellant.

*J. J. Krajicek*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

MESSMORE, J.

This is an action in equity to redeem from two real-estate mortgages as the equitable owner thereof, and for an accounting.

The plaintiff's amended petition discloses the following facts: Early in 1925, the plaintiff, a building contractor, purchased by contract lot 16, block 2, Begley Park, an addition to the city of Omaha, and began the construction of a residence thereon for investment purposes. To complete the building and replenish his working capital, he deeded the property to his wife without consideration save their mutual covenants, under an oral agreement with her that the property was to be used only for procuring additional capital and to secure business debts; that he would repay all such sums and discharge the debts from his personal funds and hold her harmless therefor, and that the property, though held in her name, should remain his, with all its burdens, thereby in better protection of his wife should anything happen to him before the obligations were fully paid. On August 8, 1925, he joined with his wife in executing a note for $1,500 with interest, due August 8, 1930, and to secure the note, he joined with her in executing a mortgage on this real estate. With his capital replenished he carried on his business and later became indebted to the J. B. Watkins Lumber Company for materials furnished. To secure this indebtedness he and his wife joined in a note on May 29, 1929, in the amount of $2,054.46, bearing interest at six percent per annum, payable in installments of $50 per month. For further security, he and his wife entered into a second mortgage which was executed and delivered to J. B. Watkins personally, on the same property, in payment of plaintiff's obligation to the company. On August 8, 1930, the first mortgage became due and remained unpaid. On November 17, 1930, the lumber company pro-

cured an assignment from the plaintiff, bearing only his signature, of all the rents from the mortgaged property, knowing that the first mortgage was due and unpaid and that the plaintiff's wife still remained the titleholder. The assignment provided the rent received was to be applied on expenses incurred by the property, and any excess to be applied on unpaid accounts of the plaintiff with the company, the assignment to concern insofar as any interest the plaintiff appears to have in the property. Under the terms of the assignment the company took over the management of the property and collected the rentals, believed to average about $30 per month, for a period of 14 years without objection from the titleholder. The company assumed interest payments on the first mortgage and paid interest to August 12, 1933. On the same day the first mortgagee, in pursuance to an oral agreement had with the titleholder for a seven-year extension and renewal of the covenants of the first mortgage, prepared a written agreement, the effect of which was to extend the first mortgage to August 8, 1937. The extension was executed by the titleholder, then an unmarried woman, the plaintiff having procured a decree of divorce from her in October of 1932, which became final April 24, 1933. The plaintiff was not a party to the extension agreement. The divorce decree contained no modification or adjudication of the property rights of the parties respecting the property in controversy. After the first mortgage again became due, the lumber company paid it and became the owners thereof by assignment.

The plaintiff claims that the company concealed the facts with reference to the ownership of the first mortgage from him. He further claims he was refused information as to the rentals collected and expenses and payments made by the company on either mortgage, though he was entitled to this information as a coobligor on both original mortgages and as a beneficial mortgagor or the real owner of the equity of redemption in the mortgaged property.

By information obtained from various sources, the plaintiff believed the mortgage indebtedness was wholly or near-

ly paid. As a result thereof, he made demand on the lumber company and J. B. Watkins personally, by letter dated April 28, 1944, for an accounting, for the purpose of redemption, or to release the liens. There was no compliance with this demand.

The plaintiff further claims that the lumber company and J. B. Watkins, in bad faith, thereafter attempted to balk the plaintiff in his declared purpose to redeem the real estate, by fraudulently and collusively procuring and recording a warranty deed to the real estate from the plaintiff's divorced wife.

The prayer of the amended petition is to the effect that plaintiff be found entitled, as beneficiary of a trust, as co-obligor or otherwise, to the right of redemption; that the amount necessary to redeem be determined; that plaintiff be found entitled to an order of cancellation or satisfaction of either or both mortgages, if found fully paid, or upon payment within the time fixed of the amount found justly due, to an order, when redemption money has been paid or other conditions met, to operate as a conveyance to, or as quieting title in him; and for such other and different relief to which, in equity, he may be found entitled.

The tenants were made defendants to this action, and no cause of action is pleaded against them. For the purposes of this appeal they have no rights to be determined herein.

The plaintiff, appellant, for convenience hereinafter will be referred to as plaintiff, and the defendant appellees will be referred to as defendants.

The defendants demurred to the amended petition for the reason that the amended petition does not state sufficient facts to constitute a cause of action against each demurring defendant. The separate demurrers of each defendant were severally sustained. The plaintiff elected to stand on his amended petition, and not to plead further. Thereupon the court dismissed the plaintiff's cause of action. Plaintiff appeals, contending the court erred in severally sustaining the separate demurrers of the defendants and dismissing plaintiff's cause of action.

"A demurrer to a pleading admits the truth of the facts well pleaded for the purpose of determining their sufficiency as a cause of action or defense, but it does not admit the correctness of the conclusions of law drawn therefrom by the pleader." American Water-Works Co. v. State, 46 Neb. 194, 64 N. W. 711; Thurston County v. Farley, 128 Neb. 756, 260 N. W. 397.

With the foregoing rule in mind, the question is, does the amended petition state facts sufficient to constitute a cause of action against the defendants?

It is the plaintiff's contention that the facts pleaded in the amended petition establish a constructive trust.

"A constructive trust is a relationship with respect to property subjecting the person by whom the title of the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property * * * ." Restatement of the Law, Trusts, s. 1, p. 5. See, also, Wilcox v. Wilcox, 138 Neb. 510, 293 N. W. 378; Fisher v. Keeler, 142 Neb. 728, 7 N. W. 2d 659.

The purpose of the conveyance is clear. The wife was to use the property to procure additional capital and to secure the husband's business debts. He agreed to repay such debts from his personal funds. No requirement was made that the property be held in trust for him, or in any event that he would receive back the title to the property, or in the event she failed to use the property for the purposes for which it was agreed to use it, the title would revert to him. He sought to save her harmless. He conveyed the title to his wife to protect her in the event something should happen to him before the obligations were fully paid.

The amended petition discloses the plaintiff obtained a decree of divorce from Anna Kozina in October 1932, which became final on April 24, 1933.

Under the provisions of section 42-321, R. S. 1943, it is in the discretion of the court to award to the innocent party a share or interest in the real estate of the guilty party.

Gaster v. Estate of Gaster, 92 Neb. 6, 137 N. W. 900; Maxwell v. Maxwell, 106 Neb. 689, 184 N. W. 227. See Lippincott v. Lippincott, 144 Neb. 486, 13 N. W. 2d 721, and cases cited therein.

The plaintiff required no adjudication of the property here involved, and the record title remained in the wife. Obviously the husband recognized that he had deeded the title of the property to the wife and there it would remain. It is significant to note that when the first mortgage was extended the husband was not a party to the extension. The former wife, then an unmarried person, was looked to by the first mortgagee as the titleholder and the one to agree with to extend the mortgage. Having the record title, the former wife subsequently, as an unmarried person, by warranty deed deeded to the lumber company. It is apparent that the plaintiff parted with the title when he made the conveyance to his wife in 1925. The plaintiff's contention that a constructive trust is established by the facts pleaded in the amended petition cannot prevail.

The question next arises, are the facts pleaded in the amended petition sufficient to create a resulting trust in favor of the plaintiff? Such a trust is one which results in law from the acts of the parties, whether they intended to create a trust or not, sometimes called a presumptive trust because the law presumes such trust to be intended by the parties from the nature and character of their transactions with each other, although the general foundation of this kind of trust is the natural equity that arises when parties do certain things. See 1 Perry on Trusts and Trustees (7th ed.), s. 124, p. 183.

Restatement of the Law, Trusts, s. 1, p. 6, "A resulting trust arises where circumstances raise an inference that the settlor does not intend that the person taking or holding title shall have the beneficial interest (See sec. 404)."

Without repeating the facts as pleaded in the amended petition, it is obvious they do not meet the requirements to establish a resulting trust. On the contrary, they show clearly the grantor fully expected his wife to receive the

beneficial interest in the property. This is manifest by his conduct as heretofore set out.

This court is also committed to the doctrine that where the laches of the plaintiff and the staleness of his claim are apparent from the petition, objection may be taken by demurrer. Hawley v. Von Lanken, 75 Neb. 597, 106 N. W. 456. In the cited case the court said: " ' * * * it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. * * * ' " In Severson v. McKenzie, 122 Neb. 827, 241 N. W. 774, this court quoted with approval from Hawley v. Von Lanken, *supra*, the following statement: "Courts of equity have inherent power to refuse relief after undue and inexcusable delay independent of the statute of limitations." See, also, Abraham v. Ordway, 158 U. S. 416, 15 S. Ct. 894, 39 L. Ed. 1036; Barger v. City of Tekamah, 128 Neb. 805, 260 N. W. 366; Bend v. Marsh, 145 Neb. 780, 18 N. W. 2d 106.

"Laches does not grow out of the mere passage of time. It is founded upon the inequity of enforcing a claim where there has been a change in the condition or relations of the property or parties." Platte Valley Bank v. Lemke, 141 Neb. 218, 3 N. W. 2d 396. See, also, Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738.

The plaintiff parted with the record title to his former wife in 1925. Since that time, as shown by the facts heretofore set out, he made no effort to assert any claim or interest in the real estate here involved, until he brought this action in June of 1944, a period of 19 years. On November 17, 1930, he gave the assignment, personally signed by him, to the lumber company. All the assignment does is to assign to the lumber company all rents received from the property to be applied on expenses incurred by the property and if any excess remains, the excess to be applied on other unpaid accounts with the company. Under this as-

signment the lumber company went into possession as mortgagee and collected the rents. As far as the assignment is concerned, it is clear that there was no requirement that any excess over and above the expenses incident to the property would be applied on the mortgage indebtedness. This is in keeping with the plaintiff's pleading, in that he would pay the indebtedness from his personal funds. Approximately 15 years from the time of making this assignment the plaintiff seeks an accounting against the lumber company and J. B. Watkins personally. During the interim many changed conditions resulted. We make reference to the facts heretofore set out as pleaded in the amended petition.

The negligence of the plaintiff by his acts and conduct in the instant case is inexcusable. Laches is founded upon the inequity of enforcing a claim where there has been a change in the conditions or relation of the property or parties, cases previously cited.

We conclude the court properly sustained the separate demurrers of the defendants.

AFFIRMED.

Wenke, J., participating on briefs.