EVALD KOEFOED, APPELLEE, v. SOPHUS THOMPSON, APPELLANT.

FILED JANUARY 18, 1905.   No. 13,264.

1. Land: TRANSFER TO CO-OWNER: TRUST. If an owner of an undivided one-half of a tract of land conveys the same by quitclaim deed to his co-owner, who thus obtains the legal title by virtue of confidential relations between them, and under such circumstances that he ought not according to the rules of equity and good conscience as administered in chancery to hold the benefits, out of such circumstances or relations a court of equity will raise a trust by construction, fasten it upon the conscience of the offending party and convert him into a trustee of the legal title.

2. Equity. In such a case, on the refusal of the grantee to reconvey according to the agreement of the parties, the court will set aside the quitclaim deed and restore the grantor to his rights in the property.

3. Accounting. If the grantee makes no claim for an accounting, and introduces no evidence to show that he has contributed more than his share to the payment of the purchase price, the interest thereon and the taxes assessed against the land, the court is not required to state an account between the parties before rendering the decree.

APPEAL from the district court for Wayne county: JOHN F. BOYD, JUDGE. *Affirmed.*

*A. A. Welch* and *Allen & Reed,* for appellant.

*Wilbur & Berry, contra.*

BARNES, J.

The appellee as plaintiff commenced this action in the district court for Wayne county against the appellant Thompson for an accounting, to set aside a quitclaim deed executed by him to the appellant for a certain tract of land situated in said county, and to recover an undivided one-half interest therein. Issues were framed, and as no objections were made to the form or sufficiency of any of the pleadings, it is unnecessary to copy them in this opinion. The trial resulted in a finding that the parties were not partners, but that the plaintiff was the owner of an undivided one-half of the land in question, and a decree was entered setting aside the quitclaim deed, and confirming his title thereto. The defendant Thompson appealed, and the case is, under the present rule, before us for a trial *de-novo*. The evidence contained in the bill of exceptions clearly establishes the following facts:

For some time prior to the year 1891, the plaintiff and the defendant had been working together, farming and carrying on other business ventures in Wayne county under a kind of partnership arrangement. In the fore part of that year, they jointly purchased the land in question, each one contributing one-half of the first payment thereon. Thereafter they held the land under their contract of purchase until the year 1893, when they borrowed $1,800 of one Charles H. Burr, and paid the balance of the purchase price therewith, taking a joint deed for the premises. For this borrowed money they gave two notes, signed by them jointly and secured by a mortgage on the land in question. Thereupon the defendant went into sole possession of the premises, upon which there was a house, barn and other improvements; and the plaintiff left with him a considerable amount of personal property to be sold and applied to the payment of his half of the mortgage debt. Plaintiff then went on a visit to Denmark, returning in the year 1895. Meanwhile the smaller of the two notes given to Burr had become due, and a

12

foreclosure of the mortgage was had for $450, which was the amount due on said note. The plaintiff up to this time had paid his full share of the purchase money, and the interest. It then became necessary to renew the mortgage or secure another loan in order to save the premises from sale under the decree of foreclosure. The plaintiff, who at that time resided in Chicago, Illinois, for the sole purpose of enabling the defendant to renew the mortgage or secure a new loan, executed to him a quitclaim deed to the land, dated December 20, 1895, and left him in possession thereof under a verbal agreement that he would secure the money and redeem the land from the mortgage foreclosure for their joint benefit, and account for one-half of the rents and profits to the plaintiff, and in due time reconvey to the plaintiff his one-half interest therein. At the time of the commencement of this action, it appears that the defendant had paid off and satisfied the decree of foreclosure, but the balance of the $1,800 was still unpaid. It further appears that the defendant had been in possession of the whole of the premises, and had received the rents and profits therefrom, and had paid the taxes thereon, together with the interest on the mortgage. It also clearly appears that, in 1899, the plaintiff and defendant jointly, by an instrument in writing, made one F. M. Skeen their agent for the sale of the land; that Skeen found a purchaser, and thereupon the plaintiff was notified to come from Chicago to join in the sale and conveyance, and to settle up the whole matter. When he reached Wayne county, the defendant refused to sell the land, and for the first time declared his purpose to exclude the plaintiff from any interest therein. An arrangement was made, however, by which the defendant agreed to send the plaintiff $200 in cash within two weeks, together with four promissory notes of $200 each in payment for his interest in the property. Plaintiff thereupon returned to Chicago, but the agreement was never carried out, and the defendant boasted to several of his friends that he had been smart enough to induce the plaintiff to leave

under the promise of sending him the $200 and the notes within two weeks; that the plaintiff would not get the $200, and that he would never pay him anything for his interest in the land. It also appears that up to this time, in all of his transactions in relation to the property, and in all of his conversations with friends and neighbors about it, the defendant had at all times acknowledged that the plaintiff had a one-half interest therein, and that he would account to him for it whenever the land was sold. It further appears that the plaintiff had demanded a reconveyance from the defendant before the commencement of the action, which demand was refused.

On the foregoing facts it is the contention of the appellant that the agreement under which the quitclaim deed was made by the appellee to him is within the statute of frauds, and therefore the trial court erred in its findings and judgment, and we are asked to reverse the decree and dismiss the action. To support this contention the appellant relies on *Courvoirsier v. Bouvier*, 3 Neb. 55; *Hansen v. Berthelsen*, 19 Neb. 433; *O'Brien v. Gaslin*, 20 Neb. 347, and *Dailey v. Kinsler*, 31 Neb. 340. These cases are not in point. In each of them it was held that an express trust cannot be created by a parol agreement, therefore it cannot be contended that they have any application to a case where the facts create a resulting or constructive trust. We have here the case of appellee, the owner of property both real and personal, delivering possession of the personal property and making a conveyance of the real estate by quitclaim deed to appellant, by which he, in effect, constituted appellant his agent under an oral contract, which charged him with the custody, control and disposition of the property, and required him to account to appellee for it or its proceeds. Thus given the undisputed ownership of the appellee, the fiduciary or confidential relation between the parties, the conveyance without consideration except a mere matter of convenience in handling the property for the joint benefit of both parties, the law raises a duty on the part of the

appellant to respond to the demand of the appellee for a
return of such property or the proceeds, and a court of
equity should find no difficulty in enforcing the contract
as made. One of the provisions of our statute of frauds
is that it shall not be construed so as to prevent any trust
from arising by implication or operation of law. We
think this case falls within the rule relating to such a
trust, and is therefore not within the statute of frauds.
In many things the case at bar closely resembles *Wood
v. Rabe,* 96 N. Y. 414, which was an action brought to
enforce an oral agreement between the plaintiff and his
mother in respect to certain real estate in the city of New
York. It appeared in that case that the property had been
devised by will to the plaintiff, with a life estate in his
mother, who was one of the defendants. Two judgments
had been entered by confession against the plaintiff and
in favor of one Stillwell, his brother-in-law, which became
liens on the plaintiff's interest in the land. Execution
was issued on one of the judgments, and the sheriff sold
thereunder the right, title and interest of the plaintiff in
and to the premises to said Stillwell, for the sum of $740.
The mother thereupon bought the premises, under an
arrangement with the plaintiff to protect him and save
the property, which was worth much more than the judg-
ments in question, the agreement being that, when the
plaintiff should pay the money advanced by her, the
property was then to be conveyed back to him. After-
wards she refused to convey the property upon the tender
of the amount due. Action was brought by the plaintiff
to recover his interest in the land, and in granting the
relief prayed for the court said:

"There are two principles upon which a court of equity
acts in exercising its remedial jurisdiction, which taken
together in our opinion entitled the plaintiff to maintain
this action. One is that it will not permit the statute
of frauds to be used as an instrument of fraud, and the
other that, when a person through the influence of a con-
fidential relation acquires title to property, or obtains an

advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief."

The transaction in the case at bar was between parties who, as shown by the testimony, believed themselves to be partners and who we conclude were such, although no formal agreement of partnership existed between them. The relation of partnership is fiduciary in its strictest sense, and involves the greatest confidence between the parties thereto. The confidence which the appellee in this case reposed in the appellant had its origin in their previous dealings, and their previous partnership arrangements in farming and other matters. So that, when it became necessary to place the title of the premises in the appellant as a matter of convenience in securing a new loan and executing the proper papers in that behalf, in order to save the property from the foreclosure sale for their mutual benefit, there was no reason why the appellee should not repose the strictest confidence in the good faith of his former partner, and execute a conveyance in the nature of a quitclaim deed without other and further consideration, and for that sole purpose. The betrayal of this confidence by the appellant and his subsequent refusal to carry out his contract to account for the property or its proceeds to the appellee are sufficient to raise the presumption that he intended from the first to defraud his partner of his interest in the land and give rise to a constructive trust. *Wood v. Rabe, supra; Brison v. Brison,* 75 Cal. 525, 17 Pac. 689; *Kimball v. Tripp,* 136 Cal. 631, 69 Pac. 428.

It is a well-settled principle of law which has been recognized by this court that, where there was a confidential or fiduciary relation between the parties to an agreement, the existence of the evil intention at the time the promise was made may be inferred from the failure to comply with such promise, and the promisor will be presumed to have intended when he made the promise to do what he finally did do. In *Pollard v. McKenney,* 69 Neb. 742, commenting on *Brison v. Brison, supra,* we said:

"The court held, not only that a promise made with the intention of not performing it is fraudulent, but that the violation by the grantee of a promise to reconvey is constructively fraudulent, and gives rise to a constructive trust, which may be established by parol, if he obtains an absolute deed without consideration, by means of a parol agreement to reconvey to the grantor to whom he stands in the confidential relation, *even where there be no intention at the time not to perform the promise.* \* \* \* A transaction of that character involves more than a mere breach of contract; there is also involved the element of confidence reposed by the grantor in one upon whom he had a right to rely, and a betrayal of such confidence."

In such a case the court may well deprive the defendant of the fruits of a fraudulent transaction, and still give force and effect to the statute of frauds. *Larmon v. Knight,* 140 Ill. 232, 29 N. E. 1116; *Newton v. Taylor,* 32 Ohio St. 399. In the last named case it was held without reservation, that a trust raised by implication of law may be proved by parol.

*Kimball v. Tripp, supra,* is a case where the plaintiff conveyed real estate by a deed absolute on its face to an agent, with oral instructions to dispose of the property as she directed. The principles involved in that controversy are much the same as the principles involved in this. The agent refused to carry out the directions imposed upon him by the oral agreement contemporaneous with the execution of the deed. Judgment was entered in the lower court against the defendant, and he appealed. The supreme court of California in deciding the controversy, when the protection of the statute of frauds was invoked, said:

"The position of the appellant on this point is that, as there was no fraud in the procurement of the conveyances, the plaintiff can have no relief. But, assuming the absense of fraud (though, in view of the defendant's relation to the grantor as her agent, this can hardly be assumed), it does not follow that equity cannot afford

relief. The deeds, it was found, were made to the defendant simply as her agent, and were therefore taken by him in trust for her; and though the trust was not expressed in writing, equity will not permit the defendant to convert the property to his own use, contrary to the intention of the parties and to the confidence reposed in him."

It seems to be well settled that if a party obtain the legal title to property by virtue of a confidential relation, and under such circumstances that he ought not according to the rules of equity and good conscience as administered in chancery to hold the benefits; out of such circumstances or relations a court of equity will raise a trust by construction, fasten it upon the conscience of the offending party and convert him into a trustee of the legal title. *Pollard v. McKenney, supra.*

It is claimed, however, that, before the decree complained of could be rendered, the court should have made an accounting between the parties, and required the plaintiff to pay the amount found due from him to the defendant as a condition precedent to setting aside the quitclaim deed. It is sufficient to say that the evidence tended to show that plaintiff had contributed his full share to the payment of the purchase price of the land, and the interest and taxes thereon. But, if it be true that the appellant has advanced more than the plaintiff for such purposes, the matter can be properly adjusted by a proceeding for that purpose, or the amount thereof can be collected in an action at law against the plaintiff, for it is nowhere suggested that he is insolvent, and such claim against him uncollectible. Again, defendant made no claim for an accounting, and the evidence was not sufficient to enable the court to state an account between the parties. It would seem that the facts in the case at bar bring it within the foregoing rules, and therefore the decree appealed from was right.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.