BLANCH BEND, APPELLANT, V. BERT M. MARSH ET AL.,
APPELLEES.

18 N. W. 2d 106

FILED MARCH 23, 1945.  No. 31864.

*Lloyd Dort* and *Coburn Campbell*, for appellant.

*Brown, Crossman, West, Barton & Fitch, Kennedy, Holland, DeLacy & Svoboda* and *Lester L. Dunn, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

The plaintiff, Blanch Bend, commenced this action in the district court for Saline county on August 14, 1942, naming as defendants, Bert M. Marsh, Fred H. Bruning, Bert M. Marsh and Fred H. Bruning, as executors of the estate of DeWitt C. Marsh, deceased, Arnold C. Blattspieler, as special administrator of the estate of DeWitt C. Marsh, deceased, Retta McGee Dunning, United States Fidelity and Guaranty Company, a corporation, and Massachusetts Bonding and Insurance Company, a corporation. The purpose and object of the plaintiff's petition, as amended on April 14, 1943, is to recover the sum of $10,000, with interest at six per cent from August 17, 1932, and farm lands, together with the income and profits therefrom from August 17, 1932. From an order sustaining the demurrers of all the defendants to the amended petition and dismissing plaintiff's action, plaintiff has appealed.

For the purpose of this opinion the appellant will be referred to as plaintiff and the appellees by their respective names.

The facts as alleged in the plaintiff's amended petition and admitted by the demurrers are: That in 1893 DeWitt C. Marsh and Ellen C. Marsh, husband and wife, requested the plaintiff, a niece of Ellen C. Marsh, to come from her home in Illinois, where she then resided, to the Marshes'

home at Tobias, Nebraska, to work and care for them. They agreed to pay her for her services when they were through with their property. That at various times she came to Nebraska and worked and cared for the Marshes and among the years she rendered such services are the years of 1893, 1899, 1903, 1904, 1906, 1908, 1923 and 1928. In 1928 DeWitt C. Marsh took the plaintiff with him and they looked at his various farms. He then told her to choose the farm she wanted. She chose the Bruning farm, legally described as the northeast quarter of section 30, township 4, range 2, and the south 95 acres of the southeast quarter of section 19, township 4, range 2, all in Thayer county, Nebraska. Thereafter, on August 18, 1928, at their home the Marshes made, executed and delivered to plaintiff a memorandum which plaintiff accepted in full payment, accord and satisfaction for the services she had rendered with the agreement that the delivery of the property was not to be made until the Marshes were through with it for their own use. This memorandum, which plaintiff alleges has either been lost or unintentionally destroyed, is as follows:

"Tobias, Nebraska, August 18th, 1928.

"I give to Blanch Bend my Bruning Farm and $10,000 for services since whe (she) was a girl.

"Mr. and Mrs. D. C. Marsh."

Ellen C. Marsh died intestate on May 22, 1929, and no administration has been had of her estate. DeWitt C. Marsh died on April 15, 1932, leaving a solvent estate which included the Bruning farm and cash, over and above all obligations of the estate, more than sufficient to cover the sum of $10,000.

Plaintiff alleges that DeWitt C. Marsh, by reason of the agreement, became a trustee of the property in his lifetime and the plaintiff became the equitable owner thereof; that during his lifetime he did not make any delivery of the property to the plaintiff nor make any provision for the delivery thereof to her after his death; that upon the death of DeWitt C. Marsh, of which plaintiff had actual knowledge within a month after it occurred, the plaintiff became enti-

tled to the possession and legal title of the property; and that Bert M. Marsh knew of the agreement but permitted the property to be included as part of the assets of the estate and distributed under the provisions of DeWitt C. Marsh's will.

After his death a will of DeWitt C. Marsh, dated March 28, 1932, and disposing of all of his property but making no provision for plaintiff as to the property here involved, was offered for probate in the county court of Saline county and over objections made to its allowance by William E. Lyon was admitted and allowed to probate on May 20, 1932. The contestant took an appeal to the district court which appeal was, on August 8, 1932, dismissed by the court. By decree of the county court, dated May 12, 1933, entered pursuant to stipulation of the residuary devisees and legatees, the remaining assets of the estate were distributed to them, they being Ira C. Marsh, Harry D. Marsh, Bert M. Marsh, DeWitt C. Marsh and Retta McGee Dunning. In this distribution the Bruning farm was included in the share of Bert M. Marsh and the personal property, including cash, was so distributed as to equalize the division of the lands. No demand was ever made by plaintiff upon any one for this property and the right thereto until in July of 1940 when demand was made upon Bert M. Marsh, who refused plaintiff's demands. This suit was subsequently filed on August 14, 1942.

Plaintiff alleges, contends and bases many of her propositions on the theory that the order of the district court for Saline county entered on August 8, 1932, in the matter of the Estate of DeWitt C. Marsh, deceased, dismissing the appeal of William E. Lyon, contestant, is void and consequently the will of deceased dated March 28, 1932, has never been allowed and admitted to probate and that there has never been a legal administration of the estate. This has been decided to the contrary in *In re Estate of Marsh, ante,* p. 559, 17 N. W. 2d 471. Consequently, all of plaintiff's allegations with reference to the execution of the will, the lack of testamentary capacity, the exercise of undue influence and fraud

practiced upon both the county court and the district court are without merit for all of these matters could have been raised either directly in the proceeding in the county court of Saline county, instituted on April 19, 1932, for the allowance and admission of the will as objections thereto or subsequently by statutory proceedings within the time fixed by statute. The time within which such proceedings could be brought has long passed. The rule as announced by this court in *Brandeen v. Beale*, 117 Neb. 291, 220 N. W. 298, is applicable: " 'The rule obtains in this and some other jurisdictions that equity will not afford relief if the complainant has a remedy by statutory proceeding in the original action, and that to be entitled to equitable relief against the enforcement of a judgment procured by fraud the party must not have neglected to avail himself of a statutory remedy. *Van Antwerp v. Lathrop*, 70 Neb. 747; *State v. Lincoln Medical College*, 86 Neb. 269; *Bankers Life Ins. Co. v. Robbins*, 53 Neb. 44; *Proctor v. Pettitt*, 25 Neb. 96; 23 Cyc. 981; *Wirth v. Weigand*, 85 Neb. 115; *National Surety Co. v. State Bank*, 56 C. C. A. 657; *Thompson v. Laughlin*, 91 Cal. 313.' " See *Krause v. Long*, 109 Neb. 846, 192 N. W. 729.

Plaintiff further contends that this action does not arise out of or through the estate but by reason of the trust which she claims was created by the agreement entered into with the deceased and that she can recover the property in the hands of third persons who took with knowledge thereof. For the purpose of the following discussion we will assume, but not decide, that by their agreement a trust was created, of which deceased was trustee, and subsequent to his death the parties took with knowledge.

Is the plaintiff now in a position to enforce her rights? She waited more than ten years from April 15, 1932, when DeWitt C. Marsh died and her right to possession and title of the property accrued, although she knew or had constructive knowledge of or by reasonable diligence could have ascertained that no provisions had been made by deceased whereby the property claimed was transferred to her and

when, in fact, it was listed and distributed as part of the estate.

As to when, for the purpose of the running of the statute of limitations, a cause of action has accrued, we stated the rule in *Department of Banking v. McMullen*, 134 Neb. 338, 278 N. W. 551, to be as follows: "The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief."

It is the holding of this court that both the question of limitations and laches can be raised by demurrer. As stated in *Pohle v. Nelson*, 108 Neb. 220, 187 N. W. 772: "Where it appears from the statement of facts in the petition that the cause of action is on its face barred by the statute of limitations, and there are no allegations tolling the statute, a demurrer can be properly interposed to such cause of action." See, also, *Parkin v. Parkin*, 123 Neb. 836, 244 N. W. 638. And in *Hawley v. Von Lanken*, 75 Neb. 597, 106 N. W. 456, we are also committed to the doctrine that, "Where the laches of the plaintiff and the staleness of his claim are apparent from the petition, objection may be taken by demurrer."

"In the case of *Wood v. Carpenter*, 101 U. S. 135, Justice Swayne said: 'Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and the antidote go together.' " *Department of Banking v. McMullen, supra.*

The will of deceased was allowed and admitted to probate

on May 20, 1932, whereby all his property was bequeathed and devised. If the trust existed and the legal representatives and the devisees and legatees took the same subject thereto, they thereby became constructive trustees for the purpose of carrying out the original terms and conditions of the trust. "The interest of the beneficiary in the trust property is not cut off by a transfer by the trustee in breach of trust to a third person who at the time of the transfer has notice that the transfer is in breach of trust, although he paid value for the transfer; and the beneficiary can in equity compel the third person to restore the property to the trust. The third person holds the interest which he acquires by the transfer upon a constructive trust for the beneficiary of the trust." Restatement, Trusts, sec. 288, p. 878.

In 37 C. J., sec. 270, p. 909, the application of the statute of limitations as to constructive trusts is discussed as follows: "It is generally held that the rule that the statute of limitations does not run in favor of a trustee against the cestui que trust applies only to express trusts, and that implied or constructive trusts are within the operation of the statute, so that a suit to impose and enforce such a trust may become barred. * * * In the case of a constructive or implied trust, except where the trust is imposed on the ground of actual fraud which is not immediately discovered, or there has been a fraudulent concealment of the cause of action, the statute begins to run in favor of the party chargeable as trustee as soon as the trust relation is created, or from the time when the wrong is done by which the trustee becomes chargeable, or the time when the beneficiary acquires knowledge of and can assert his rights; not from the time when demand is made on the trustee, or the trust is repudiated by him, for no repudiation of an implied or constructive trust—as an involuntary trust always is—is ordinarily necessary to mature a right of action and set the statute in motion; * * * ." The rule is stated in 17 R. C. L., sec. 162, p. 794, as follows: "The rule as to when the statute of limitations begins to run differs in the case of voluntary

and of involuntary trustees. If a voluntary trustee does not repudiate the trust, but continues to act under and in harmony with it, the beneficiaries have no right of action against him, and the statute must remain inoperative until the trust is repudiated. But it is generally held that no repudiation of an implied or constructive trust is necessary to set the statute in operation. In such cases the general rule is that it runs from the time when the act was done by which the party became chargeable as trustee by implication or, as it is sometimes expressed, from the time when the cestui que trust could have enforced his right by suit." See 34 Am. Jur., sec. 179, p. 143.

In *Department of Banking v. McMullen, supra,* we approved from *Hayden v. Thompson,* 71 Fed. 60, the following: " ' * * * lapse of time is as complete a bar to a constructive or implied trust in equity as at law, unless there has been a fraudulent concealment of the cause of action.' " See *Haynie v. Hall's Executor,* 5 Humphr. (Tenn.) 290, 42 Am. Dec. 427.

Where, as here, the plaintiff knew of the death and had constructive notice of the probate of his will (*Miller v. Estate of Miller,* 69 Neb. 441, 95 N. W. 1010) and by reasonable diligence could have ascertained that the property was being handled as part of the estate and being distributed as such under the provisions of the will, we think the statute applies and has run. There was no concealment of how the property involved was being considered and handled. It was listed as part of the assets of the estate and distributed as such. For more than the statutory period the plaintiff has had her right to sue but failed to bring an action. She is barred as to all the defendants under every applicable statute of limitations.

There is another reason why the demurrers should be sustained. Plaintiff alleges that the defendant, Bert M. Marsh, knew of her agreement with the deceased and that shortly after the death of Ellen C. Marsh in 1929 he inquired of her as to a paper that was lost and, being advised she did not know where it was, he told her he would see

that she was provided for. However, with full knowledge that her claimed rights under the agreement with DeWitt C. Marsh had accrued upon his death on April 15, 1932, and of which she had actual knowledge within a month, she permitted the will of the deceased, dated March 28, 1932, to be admitted and allowed to probate and the estate to be administered pursuant thereto although this will made no provision for her as to the property she now claims. Without taking any action or making any demand upon the representatives of the estate or the beneficiaries under the will she permitted this property to be included as assets of the estate and distributed to the five residuary devisees and legatees, only two of whom are defendants in this action. The farm here sought to be recovered was received by Bert M. Marsh, a residuary devisee and legatee, as part of his share of the estate. Plaintiff never at any time until July of 1940 advised Bert M. Marsh or Retta McGee Dunning, the two residuary devisees and legatees made defendants in this action, that she claimed either the farm or the money.

" ' "Independently of any limitation for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done in the particular case by granting the relief asked." *Abraham v. Ordway,* 158 U. S. 416.' *Severson v. McKenzie,* 122 Neb. 827." *Barger v. City of Tekamah,* 128 Neb. 805, 260 N. W. 366. "Laches does not grow out of the mere passage of time. It is founded upon the inequity of enforcing a claim where there has been a change in the condition or relations of the property or parties." *Platte Valley Bank v. Lemke,* 141 Neb. 218, 3 N. W. 2d 396. See *In re Guardianship of Protsman,* 136 Neb. 192, 285 N. W. 494.

The neglect of the plaintiff in waiting more than ten years from the time she knew, or ought to have known from the circumstances of which she had notice or by reasonable diligence could have ascertained, that the deceased had failed to carry out the terms of the agreement before commencing her action to recover the property she claims by reason

thereof, and permitting it to be included in his estate and distributed under his will as such and received by part of the residuary devisees and legatees who received the same as part of their share of the estate, is such laches as will bar the granting of the relief for which she here prays.

In accordance with the opinion, the action of the trial court is affirmed.

AFFIRMED.