YVONNE FLEURY, APPELLEE, V. MARVIN CHRISMAN, APPELLANT.

264 N. W. 2d 839

Filed April 12, 1978. No. 41395.

Vincent J. Kirby, for appellant.

Deutsch, Jewell, Otte, Gatz, Collins & Domina, for appellee.

Heard before SPENCER, McCOWN, CLINTON, and BRODKEY, JJ., and COADY, District Judge.

CLINTON, J.

This is an action in equity to impress a constructive trust upon an undivided one-half interest in a quarter section of land in Cedar County, Nebraska, for an accounting of rents and profits, and for partition of the land. The defendant answered by general denial and by pleading the affirmative defenses of the statute of frauds, and that the cause of action was barred by the statute of limitations as well as laches. After trial on the merits, the court found

that the defendant held an undivided one-half interest in trust for the plaintiff by virtue of a constructive trust which had ripened into an express trust because of the defendant having acknowledged the trust in writing. The court ordered that the property be partitioned, and reserved for future hearing and determination the matter of accounting of rents and profits.

The defendant appealed from the decree and here argues the following assignments of error: (1) The evidence does not support the finding of the court, and (2) the plaintiff's cause is barred by the statute of limitations and laches. We affirm.

The plaintiff, Yvonne Fleury, and the defendant, Marvin Chrisman, are brother and sister. Their father died intestate on February 16, 1956, and the real estate in question descended in equal shares to them and their brother, Daryl. Gordon Chrisman, an uncle, managed the property for the three cotenants until his death in 1962. Daryl then desired to sell the land. Marvin suggested to Yvonne that the land be conveyed to a corporation, Fairfax Fund, Inc., owned by him, and that the corporation borrow money by increasing or refinancing the existing mortgage in order to buy Daryl's interest and then the two would own the property. He would manage it and pay Yvonne her share of the net income and when the land was later sold account to her for the profit on the sale.

In December 1963 and May 1964 the three cotenants executed a deed to the land in which Fairfax Fund, Inc., was named as grantee. Fairfax was a foreign corporation and it was discovered that no loan could be made to it. The deed was returned by Marvin to Yvonne, apparently without delivery to the corporation and without recording. In 1965 the three parties, in accord with the oral agreement between Yvonne and Marvin, executed a deed conveying the property to Marvin subject to the unpaid bal-

ance of the mortgage in the amount of $6,200. Daryl was paid for his one-third interest in the property. The inference from the evidence is that Marvin paid Daryl from his own funds and not by borrowing on the security of the land for no new mortgage was executed or recorded.

Previous to the conveyance to Marvin, he apparently undertook management of the farm and rendered to Daryl and Yvonne an accounting for the year ending April 1, 1963, which showed a small profit from income and which credited each of the parties with a net of $100. Among the expenses listed was an item for interest paid to Fairfax Fund, Inc., of $48. Marvin had earlier submitted a bill for his services under date of August 23, 1962. For the year 1963 he submitted an accounting in the name of Fairfax Fund, Inc., which referred to a check enclosed for one-half of the profit and showed reimbursement to himself for $500 advanced. For the years 1964 and 1965, he transmitted to Yvonne checks in the amount of $1,650 and $835, together with an accounting for those years. In 1968 he executed and delivered to Yvonne a promissory note calling for payment on demand of the sum of $4,950, together with a real estate mortgage on the land which he had executed. Yvonne testified that he told her at the time he was involved in a divorce proceeding and this would protect her interest.

Thereafter Marvin made no further payments to Yvonne, but did file irregularly unverified "accountings" from 1971 to 1975. In 1975 he wrote a letter to Yvonne which, among other things, showed that he claimed interest owing to him of $35,000. The basis of the claim for interest does not appear.

Yvonne filed this action on May 18, 1976. Summons was immediately issued and was served on Marvin on May 20, 1976.

The contentions of Marvin, although not explicitly developed in his brief, seem to be these: (1) Since

Yvonne conveyed to Marvin only a one-third interest in the property, she can, at most, assert only an interest to that extent, and this interest cannot stand because the statute of frauds requires that the creation or declaration of a trust in land be in writing. (2) Marvin advanced the money for the purchase of Daryl's one-third interest and title came directly to Marvin, therefore he has, in any event, a two-thirds interest in the property free of any claim of constructive trust. (3) Yvonne cannot recover her one-third interest in the property because her cause is barred by the statute of limitations and by laches.

The deed by which legal title to the land was conveyed to Marvin was absolute in form and contains no words creating or declaring a trust of any undivided interest therein. The position of Yvonne is that the circumstances give rise to a constructive trust, arising by operation of law, and that the statute of frauds does not bar determination of Yvonne's title and her right to partition.

No estate or interest in land, including a trust therein, may be "created, . . . or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, . . . or declaring the same." § 36-103, R. R. S. 1943. Section 36-103, R. R. S. 1943, does not "prevent any trust from arising . . . by . . . operation of law." § 36-104, R. R. S. 1943. See, also, Restatement, Trusts 2d, § 44, p. 113.

We have defined a constructive trust in the following language: ". . . a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." Box v. Box, 146 Neb. 826, 21 N. W. 2d 868. A constructive trust may arise by operation of law where legal title is acquired by virtue of a confi-

dential relationship between the grantor and the grantee and under such circumstances that the grantee ought not, according to the rules of equity and good conscience, hold the benefits. Where such circumstances exist, a court of equity will raise a trust by construction and convert the grantee into a trustee of the legal title. Koefoed v. Thompson, 73 Neb. 128, 102 N. W. 268. "The burden of proof is upon one seeking to establish the existence of a constructive trust to do so by evidence which is clear, satisfactory, and convincing in character." Musil v. Beranek, 160 Neb. 269, 69 N. W. 2d 885. See, also, Campbell v. Kirby, 195 Neb. 610, 239 N. W. 2d 792.

In the case before us, it is certain that the circumstances give rise to a constructive trust and that the proof meets the tests laid down in Musil v. Beranek, *supra*.

That Yvonne reposed trust and confidence which gave rise to a confidential relationship by reason of which Marvin acquired legal title is clear from the following circumstances. Marvin is an older brother of Yvonne. They were tenants in common. Marvin undertook as Yvonne's agent, even before the conveyance to him, to manage the farm and, as is clear from his charges for services, did so for a consideration and expected to be paid. He is the one who suggested the title and management arrangement. He claimed to be knowledgeable in the matters he undertook as is evidenced by contents of his letters to Yvonne and his control and implementation of legal details such as the negotiations with Daryl, the causing of the preparation of the various deeds, as well as the note and mortgage which he later gave to Yvonne. That these circumstances create a confidential relationship is clear from our holdings in the following cases: O'Shea v. O'Shea, 143 Neb. 843, 11 N. W. 2d 540 (brother and sister); Windle v. Kelly, 135 Neb. 143, 280 N. W. 445 (tenants in common); Koefoed v. Thompson, *supra* (partners

and cotenants); Johnson v. Hayward, 74 Neb. 157, 103 N. W. 1058 (principal and agent).

That the terms of the agreement are proved not only by clear, convincing, and satisfactory evidence, but conclusively, appear from the following details of evidence in addition to that which we have already summarized. Yvonne's version of the terms of the agreement are uncontradicted by evidence. Various writings prepared by Marvin and signed or initialed by him are in evidence. They cover the period beginning with the initial agreement, down to and including the time when Yvonne first consulted an attorney in 1975. These writings contained numerous recitals which are acknowledgements by Marvin of Yvonne's interest and include the following: "Sis" (Yvonne) is "in"; "Yvonne Fleury is also to share in any increase or decrease in value of property relative to the purchase price of $21,250''; "Property is to be sold at expressed wish to do so of either Yvonne Fleury or the Fairfax Fund, Inc."; "owned jointly by my sister and myself"; "Our land has increased in value"; "buy up your share of the land"; "pay you the difference in gain when land is sold later."

Marvin also submitted to Yvonne an inventory of capital investments made on connection with the management of the land which included expenditures for grain bins and farm machinery. He, in writing, offered to partition the land in kind by drawing a line east to west and flipping a coin to determine who got which tract. In 1975 Yvonne consulted an attorney and he wrote a brief letter to Marvin concerning management of the land, identifying it by legal description and requesting an itemized statement of income and disbursements. The letter also stated: "From your letters, you apparently concede that she owns a half interest." Marvin responded, promising an itemized statement, and did not dissent from the assertion that he conceded

Yvonne's ownership of a half interest.

We now consider Marvin's contention relative to the portion of Yvonne's interest in the land which has its origin in the conveyance from Daryl and for which Marvin advanced the purchase money. As to that undivided one-sixth interest the circumstances are such that the relationship, rather than being that of constructive trust, fits, we believe, more aptly into one of the categories of resulting trust usually described as a purchase money trust. In this case the agreement was that Marvin would take title in his own name, borrow money on the security of the land, and pay Daryl. He was Yvonne's agent for that purpose. In this instance he did not borrow the money from a third party, as was contemplated, and mortgage the land as security, but furnished it himself. Since he held the legal title he had security for this loan. Yvonne had furnished security for her part of the purchase price. The situation is not in substance different than if Yvonne had advanced the money herself, or if Marvin had borrowed from a third party.

Where one employed to act as agent for another in the purchase of real estate becomes the purchaser himself, he will be considered in equity as holding the property in trust for his principal, although he purchased with his own money. Johnson v. Hayward, *supra.* See, also, Hoehne v. Breitkreitz, 5 Neb. 110; Wiskocil v. Kliment, 155 Neb. 103, 50 N. W. 2d 786. In the last-cited case the court described the trust as being a constructive trust. However, the facts are such that it could have been called either a resulting or a constructive trust.

We now consider the defenses of the statute of limitations and laches. As to the defense of the statute of limitations, Marvin relies upon our holding in Bend v. Marsh, 145 Neb. 780, 18 N. W. 2d 106, where we said: "In the case of a constructive or implied trust, except where the trust is imposed on the

ground of actual fraud which is not immediately discovered, or there has been a fraudulent concealment of the cause of action, the statute begins to run in favor of the party chargeable as trustee as soon as the trust relation is created, or from the time when the wrong is done by which the trustee becomes chargeable, or the time when the beneficiary knew or ought to have known thereof and can assert his rights; not from the time when demand is made on the trustee, or the trust is repudiated by him, for no repudiation of an implied or constructive trust is ordinarily necessary to mature a right of action and set the statute in motion." The above statement of the rule as applied to the facts in Bend v. Marsh, *supra,* is, without doubt, correct. In that case the trust arose from a broken promise. The constructive trust was one arising ex maleficio. The rule is otherwise when the trust grows out of a consensual arrangement. In the latter case the statute does not begin to run until there has been a repudiation of the trust. In Dewey v. Dewey, 163 Neb. 296, 79 N. W. 2d 578, we said, quoting from Restatement, Trusts, § 219, p. 267, Comment on Subsection (1) b: " 'The length of time necessary to bar the beneficiary from holding the trustee liable for breach of trust depends upon the circumstances. In the absence of special circumstances the beneficiary is barred if the period of the Statute of Limitations applicable to actions at law in analogous situations has run.' " The analogous statute in this case is the one barring claims for recovery of real estate and the period of limitation is 10 years. In the case before us, until about 1975 there were no facts from which a repudiation could be inferred. The rule applicable in this case is: The statute of limitations does not begin to run in the case of a resulting or constructive trust growing out of a consensual arrangement until the trustee clearly repudiates the trust. The time when the statute of limitations commences to run must be determined

on the facts in each case. Jirka v. Prior, 196 Neb. 416, 243 N. W. 2d 754; Dewey v. Dewey, *supra.*

The defense of laches is not supported by the evidence. "Laches does not grow out of the mere passage of time. It is founded upon the inequity of enforcing a claim where there has been a change in the condition or relations of the property or parties." Dewey v. Dewey, *supra.* See, also, Bend v. Marsh, *supra.* " 'Where the obligation is clear, and its essential character has not been affected by the lapse of time, equity will enforce a claim of long standing as readily as one of recent origin; certainly, as between the immediate parties to the transaction.' " Schurman v. Pegau, 136 Neb. 628, 286 N. W. 921.

AFFIRMED.