HERBERT WAIT ET AL., APPELLANTS AND CROSS-APPELLEES, V.
LYNDALL CORNETTE, PERSONAL REPRESENTATIVE OF THE ESTATE
OF EDWARD P. WAIT, APPELLEE AND CROSS-APPELLANT.
612 N.W. 2d 905

Filed June 30, 2000.    No. S-99-126.

Robert W. Mullin, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellants.

Steven W. Olsen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is an appeal from an order of summary judgment entered by the district court in favor of Lyndall Cornette, personal representative of the estate of Edward P. Wait, on the basis of the statute of limitations and laches. Herbert Wait, Elna Sampy, Madeline Bedient, Vernon Wambaugh, Louise Bakka, Ilo Fosket, Raymond Boren, Sharon D'Loughy, Rick Henderson, Susan Magnuson, Donald Ottoway, Terri Braun, Winona Carlson, Betty Sullivan, Dick Moscrip, Bill Moscrip, Bob Moscrip, Mary Edwards, Rex Moscrip, and Max Moscrip appeal, and Cornette cross-appeals. On our own motion, we removed the matter to our

docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## BACKGROUND

On July 23, 1928, Minnie S. Wait purchased a farm/ranch for $21,600. It is referred to by family members as the "home place." The money to purchase the home place came from cash in a trust Minnie had inherited from her mother's estate. That trust gave Minnie a life estate in the money and gave Minnie's children the remainder interest in the money. When Minnie purchased the home place, she had nine children: Gladys C. Wambaugh, Ruth H. Boren, Frankie M. Ottaway, Elna, Edward, Albert Wait, Vera Moscrip, Madeline, and Herbert. At the time of the transfer of principal from the trust to Minnie for the purpose of purchasing the home place, there was a family agreement created wherein the trust money could be used to purchase the home place and in return, upon Minnie's death, the home place would be divided equally among the nine children. It was also agreed among the family members that as each child reached the age of 21, he or she would sign a release to the trustees that had held the money in trust. When the home place was purchased, some of the children were 21 years or older and others were not. Five of the nine releases have been located and appear in the record. The releases transferred the children's complete interest in the money to their mother, Minnie.

Ownership in the home place was held by Minnie, and the home place was operated by the family until December 30, 1954. At that time, Minnie transferred the home place by warranty deed to her son, Edward, for $36,000. Minnie's children did not consent to the transfer nor did they know that it took place until after it occurred. There is some evidence that after the transfer of the home place to Edward, Minnie's children were led to believe by Edward that he was to have the home place for his lifetime and that upon his death, Minnie's children and their heirs would each get a one-ninth share of the home place. However, this arrangement is contrary to the written instruments (the 1928 deed to Minnie, the releases signed by the children, and the 1954 deed to Edward), all of which are absolute and describe no such limitation or trust.

Minnie died on October 25, 1964. Minnie's estate was probated, and a decree of distribution was issued on July 13, 1965. Minnie's heirs were her nine surviving children. No mention of the home place was made in the probate of Minnie's estate. At the time of Minnie's death, Edward was still title owner of the home place. Edward died on February 28, 1997. Six of Minnie's children are now deceased, leaving heirs. The three living children (Madeline, Elna, and Herbert) and the heirs of the six deceased children are the appellants and cross-appellees (appellants) in this case. Cornette, Edward's stepdaughter, is the personal representative of Edward's estate and the appellee and cross-appellant (appellee) in this case.

Appellants filed an amended petition to recover their interest in the home place on August 24, 1998, alleging that a resulting trust was created in 1928 when Minnie purchased the home place because the home place was purchased in substantial part by Minnie's children's interest in the trust of Minnie's mother. The amended petition also alleged that a constructive trust was created when the home place was transferred to Edward in 1954 because Edward obtained title to the home place by fraud, misrepresentation, or an abuse of an influential or confidential relationship.

Appellee motioned for summary judgment, which the trial court sustained. The trial court found that appellants were correct in the assertion that there are genuine issues of fact about whether they proved by clear and convincing evidence the existence of a resulting trust when Minnie purchased the home place and the continuation of that resulting trust and establishment of a constructive trust when that same home place was purchased from Minnie by Edward. However, the trial court found that those events occurred in 1928 and 1954, respectively, and that the affirmative defenses of the statute of limitations and laches barred appellants from pursuing their claims.

## ASSIGNMENTS OF ERROR

Appellants assign that the trial court erred in (1) finding that a constructive trust cannot be a consensual trust; (2) determining that the cause of action accrued at the time of the deed to Edward in 1954 and not at the time of his repudiation of the trust on his

death in 1997; (3) determining as a matter of law that appellants' burden included a showing that they, or some of them, consented to the lifetime ownership and use by Edward prior to the deed to Edward in 1954; and (4) finding that "[i]f Edward got the home place by promising that his brothers and sisters would share it upon his death, that doesn't mean the trust was changed by consent. It just means he got that deed by a false promise."

Appellee assigns that the trial court erred in (1) not granting appellee's motion for summary judgment as to the creation of a resulting and constructive trust, (2) finding that there were facts sufficient to make a claim for a resulting trust, (3) finding that there were facts sufficient to claim a constructive trust, and (4) failing to find that appellants' claims were barred by the statute of frauds.

## SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Callahan v. Washington Nat. Ins. Co.*, ante p. 145, 608 N.W.2d 592 (2000); *Schrader v. Farmers Mut. Ins. Co.*, ante p. 87, 608 N.W.2d 194 (2000). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Neill v. Hemphill*, 258 Neb. 949, 607 N.W.2d 500 (2000); *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999).

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000); *NECO, Inc. v. Larry Price & Assocs.*, 257 Neb. 323, 597 N.W.2d 602 (1999).

## ANALYSIS

The trial court found that appellants' claims were barred by the statute of limitations and the doctrine of laches. In order to

analyze the statute of limitations question within the framework of this case, it is also necessary to analyze resulting trusts and constructive trusts and, if a constructive trust was formed, whether or not the constructive trust arose out of a consensual arrangement, as all of these bear on the issue of when the statute of limitations began to run.

## RESULTING TRUST

Appellee argues that there are not sufficient facts to make a claim that a resulting trust was created when Minnie purchased the home place in 1928. A resulting trust is one raised by implication of law and presumed always to have been contemplated by the parties; the intention of the resulting trust is to be found in the nature of their transaction, but not expressed in deed or instrument of conveyance. *Brtek v. Cihal,* 245 Neb. 756, 515 N.W.2d 628 (1994); *Superior Hybrids Co. v. Carmichael,* 214 Neb. 384, 333 N.W.2d 911 (1983). Where a transfer of property is made to one person and the whole or a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made. *Brtek v. Cihal, supra; Superior Hybrids Co. v. Carmichael, supra.*

The evidence indicates that the money from the trust of Minnie's mother, of which Minnie's children were beneficiaries, was used to buy the home place. The three living children of Minnie all testified to this effect. The record also contains letters written in 1928 by three of Minnie's daughters, in which they corresponded about the use of the trust money to purchase the home place. The evidence also indicates that when each of Minnie's children turned 21 years of age, they were to sign a document approving of the transaction and releasing the trustees from liability. Five of the documents signed by Minnie's children are contained in the record.

The evidence also indicates that in buying the home place with the money from the trust of Minnie's mother, there was a family agreement that upon the death of Minnie, each of the nine children would receive one quarter section from the nine quarter sections making up the home place. The evidence raises genuine issues of fact as to the existence of a resulting trust when Minnie purchased the home place in 1928.

## CONSTRUCTIVE TRUST

■ Appellee also contends that the trial court erred in finding that there were sufficient facts to make a claim that a constructive trust was established when Edward got title to the home place in 1954. A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment. *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998); *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997).

■ A constructive trust is imposed when one has acquired legal title to property under such circumstances that he or she may not in good conscience retain the beneficial interest in the property. In such a situation, equity converts the legal titleholder into a trustee holding the title for the benefit of those entitled to the ownership thereof. *Hanigan v. Trumble, supra.*

■ A constructive trust may arise by operation of law where legal title is acquired by virtue of a confidential relationship between the grantor and the grantee and under such circumstances that the grantee ought not, according to the rules of equity and good conscience, hold the benefits. Where such circumstances exist, a court of equity will raise a trust by construction and convert the grantee into a trustee of the legal title. *Fleury v. Chrisman*, 200 Neb. 584, 264 N.W.2d 839 (1978).

Appellants' amended petition alleges that a constructive trust arose in 1954, when the home place was transferred to Edward, because Edward obtained title to the home place "by fraud, misrepresentation or an abuse of an influential or confidential relationship that he had with his mother and father, Minnie S. Wait and John H. Wait and the family members whose money went to the purchase of the 'Home Place.' " There is evidence to indicate that at the time Minnie transferred title to Edward, she was ill and not thinking well, Edward had considerable influence over her, and Edward told his siblings that the home place would ultimately go to them upon Edward's death. These facts raise the issue that Edward acquired the property either by fraud, undue influence, or abuse of a confidential relationship, which would support a claim to establish a constructive trust.

 

## STATUTE OF FRAUDS

Appellee assigns as error that the statute of frauds bars appellants' claims. Neb. Rev. Stat. § 36-103 (Reissue 1998) is the statute of frauds which states:

> No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same.

We have held that trusts arising by implication, or by operation of law, are excepted from the operation of the statute of frauds and that resulting and constructive trusts fall within the exception. *Light v. Ash*, 174 Neb. 44, 115 N.W.2d 903 (1962). Because we determine that there are material disputed facts that establish a resulting trust and a constructive trust, appellants' claims are not barred by the statute of frauds.

## STATUTE OF LIMITATIONS

Appellants contend that the trial court erred in determining that their cause of action accrued in 1954, when the home place was transferred to Edward, rather than upon Edward's death in 1997.

In regard to the resulting trust that may have been established in 1928, the resulting trust continued until 1954 when Minnie transferred the home place to Edward. At that time, Minnie repudiated the resulting trust by transferring the home place to Edward because she was no longer holding the home place for her life with the intention of transferring it to her children upon her death.

Parties are given 10 years after a cause of action accrues to make a claim for real estate. See Neb. Rev. Stat. § 25-202 (Reissue 1995). The statute of limitations does not begin to run in the case of a resulting trust until the trustee clearly repudiates the trust. *Jirka v. Prior*, 196 Neb. 416, 243 N.W.2d 754 (1976).

The 1954 transfer by Minnie to Edward was a repudiation of the resulting trust. Therefore, the cause of action based on the

resulting trust accrued on December 30, 1954, when the home place was transferred to Edward. The 10-year statute of limitations on the resulting trust has expired.

In the case of a constructive or implied trust, except where the trust is imposed on the ground of actual fraud which is not immediately discovered, or there has been a fraudulent concealment of the cause of action, the statute begins to run in favor of the party chargeable as trustee as soon as the trust relation is created, or from the time when the wrong is done by which the trustee becomes chargeable, or the time when the beneficiary knew or ought to have known thereof and can assert his or her rights; not from the time when demand is made on the trustee, or the trust is repudiated by the trustee, for no repudiation of an implied or constructive trust is ordinarily necessary to mature a right of action and set the statute in motion. *Fleury v. Chrisman,* 200 Neb. 584, 264 N.W.2d 839 (1978); *Bend v. Marsh,* 145 Neb. 780, 18 N.W.2d 106 (1945). The rule is otherwise when the trust grows out of a consensual arrangement. In the latter case, the statute does not begin to run until there has been a repudiation of the trust. *Fleury v. Chrisman, supra.*

The trial court found that if a constructive trust arose in 1954, it would be one that arose on account of a wrong, rather than on account of a consensual arrangement. Therefore, it found that the cause of action on the constructive trust accrued at the time it was created, which was in 1954, when the home place was transferred to Edward. Appellants contend that the cause of action did not accrue until Edward's repudiation of the trust upon his death on February 28, 1997. Under *Fleury v. Chrisman, supra,* in order for a cause of action based on a constructive trust to accrue at the time of repudiation, the constructive trust must be one that arose out of a consensual arrangement.

Appellants assign that the trial court erred in finding that a constructive trust cannot be a consensual trust. This is not what the trial court found. Rather, the trial court found that in the case at bar, there was no evidence of a trust formed by a consensual arrangement when Edward received title to the home place in 1954. The trial court found that if a constructive trust was established when Edward took title to the home place, based on the evidence, it would have to be a trust established on account of

an alleged wrong committed by Edward, rather than a trust established by consent.

Appellants have argued to this court that the 1954 transfer to Edward created a constructive trust that grew out of a consensual arrangement. However, appellants' only allegation in their amended petition as to the creation of a constructive trust was that a constructive trust was created because Edward obtained title to the home place "by fraud, misrepresentation or an abuse of an influential or confidential relationship." The amended petition does not allege that the 1954 transfer created a constructive trust by consent. Appellants apparently now attempt to assert this theory due to the trial court's conclusion that a cause of action does not accrue on a constructive trust that arises out of a consensual arrangement until the time of repudiation. Where a particular theory of the case is not stated in a plaintiff's petition, he or she cannot raise it for the first time on appeal. *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996); *Gibb v. Strickland*, 245 Neb. 325, 513 N.W.2d 274 (1994).

Even if a consensual arrangement theory had been raised before the trial court, the evidence does not support it. Appellants admit that there is no proof that Edward's siblings consented to the transfer of the home place in advance of the 1954 deed to Edward. However, they contend that the consent of Edward's siblings can be inferred from the fact that the siblings took no action to challenge Edward's ownership of the home place for his lifetime.

Assuming without deciding that consent could have occurred after the transfer to Edward, we find that there is no evidence that Edward's siblings ever consented to the transfer of the home place to Edward. Rather, the evidence indicates that upon learning about the transfer, Edward's siblings were surprised and upset about the transfer. However, they did not confront Edward or Minnie, but, instead, chose to remain silent. Under the facts of this case, their silence does not indicate their consent because the evidence shows they were upset about the transfer to Edward. Rather, the silence of Edward's siblings and their failure to take any action to challenge the transfer to Edward indicates their failure to assert their rights.

Therefore, if a constructive trust was established in 1954, it would be one that arose out of a wrong, not one that arose out of a consensual arrangement. Appellants' cause of action based on a constructive trust accrued when the trust relation was created. The trust relation was created in 1954, when the home place was transferred to Edward. The trial court did not err in concluding that the cause of action based on the constructive trust accrued in 1954, when the home place was transferred to Edward.

We conclude that the trial court was correct in granting appellee's motion for summary judgment on the basis of the statute of limitations. This conclusion is dispositive of the case. We do not address the other assignments of error raised by the parties, as an appellate court is not required to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Brockhaus v. Lambert, ante* p. 160, 608 N.W.2d 588 (2000).

## CONCLUSION

There are genuine issues of fact as to whether a resulting trust was created when Minnie purchased the home place in 1928. There are also genuine issues of fact as to whether a constructive trust was established when the same home place was transferred from Minnie to Edward in 1954. However, appellants' claims are barred by the statute of limitations.

AFFIRMED.